(Decided 21st May, 1872.)

---

JOSIAS H. HAWKINS, Trustee, *vs.* SUSAN CHAPMAN, JOHN G. CHAPMAN, and others.

*Creation of an Estate in Fee—Nature of the Estate conveyed, determined by the Object to be effected—Declaration of Trust—Application to Revive a suit in Equity upon the death of the Complainant, by whom to be made—Laches and Lapse of time.*

Words of limitation or inheritance are not essential to create an estate in fee, nor is the nature of the estate conveyed, whether a trust, or use executed, determined so much by the terms used, as by the object to be effected.

Hawkins, Trustee, *vs.* Chapman. *et al.*

A deed, after reciting certain judgments,·and the fact that they had been superseded by A and B, and that C was desirous of securing them against any damage or injury which might arise in consequence of having become his security, conveyed unto D "all the right, title and interest of C and wife" in the land described, "in trust for the use and behoof of the said A and B;" with the proviso that if the said C should save A and B from all damage or injury which might result from having superseded said judgments, then the deed was to be void, otherwise to remain in full force and virtue in law. HELD:

That by virtue of the intention of the grantors and the ends to be accomplished, the deed conveyed to the grantee the legal estate in fee in the lands therein described, with power to sell and convey for the benefit of the *cestuis que trust* on condition; which being a naked trust, unaccompanied with a beneficial interest, descended on the death of the grantee to his heir at common law, as provided by the Act of 1831, ch. 311, sec. 11.

The application to revive a suit in Equity against the defendants, upon the suggestion of the death of the complainant, must be by his legal representative according to the subject-matter. If real estate be in controversy, the heir at law must be made a party, or cause shown why he is not; if only personal estate be involved, the executor or administrator must be made complainant.

After a great lapse of time and long peaceable possession, Courts of Equity ought not to interfere to grant relief, for the policy of the law is to give quiet and repose to titles; and courts of justice ought not to countenance *laches* or long delays on the part of claimants.

APPEAL from the Equity side of the Circuit Court for Charles County.

A statement of the case will be found in the opinion of the Court. During the progress of the cause, it was referred to the auditor of the Court to state accounts between the parties; accounts were accordingly stated and reported to the Court. To these accounts the respondents excepted, alleging insufficiency of proof to sustain the claims of the complainant and pleading limitations and lapse of time as a bar to their recovery.

There was also a special exception to the bill for want of proper parties complainant, interposed at the hearing.

There being a difference of opinion between the two Judges (FORD and MAGRUDER) who heard the case, a *pro forma* decree, dismissing the bill with costs, was passed on the 21st of September, 1871.

From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER and ALVEY, J.

*R. H. Edelen* and *Vivian Brent*, for the appellant.

The first question presented by the record arises on the exceptions of the defendants to the report of the auditor of the County Court of Charles county and of the High Court of Chancery, and the evidence on which the same was based.

These claims being recited in the deed of trust as judgments, the defendants are thereby estopped from denying their existence or validity; and it is only incumbent upon the complainants to prove their payment by Edward and William Hamilton.

The plea of limitations interposed as a defence is not well taken, for two reasons:

1st. The ground of action in this cause is the deed of trust, and the relief sought is the enforcement of a specific lien created thereby. In such case Courts of Equity have universally adopted the statutory bar of twenty years. *Lingan vs. Henderson,* 1 *Bland,* 236; *Crawford vs. Severson,* 5 *Gill,* 443.

2d. Courts of Equity regard the plea of limitations with great disfavor, and, as a general rule, require the Statute to be specially pleaded and relied upon by the defendant in his answer, and the only exception to this rule is when a complainant does not by his bill disclose his claim or demand, but it is afterwards disclosed by the evidence. *Nelson and Wife vs. Bond,* 1 *Gill,* 218; *Berry vs. Pierson,* 1 *Gill,* 234.

In this case the bill and exhibits filed therewith gave the defendants full notice of complainant's demand.

The main questions, and upon the decision of which the complainant's case must stand or fall, are:

1st. What is the true construction of the deed of trust?

2d. Are proper parties in Court to enable the Court to enforce the trust?

It is contended by the defendants that the trust was purely personal to Francis W. Hawkins, the trustee named in the deed, and that the trust having expired with his death, the Court had no right to substitute a new trustee in his place.

In construing deeds the same rule applies as to wills. And the intention, as gathered from the whole deed, must prevail. *Ware, et al. vs. Richardson,* 3 *Md.*, 549, 553.

And Courts will presume a deed to be the act of a reasonable man. *Per Kilty* in *Hanon vs. Towers,* 3 *H. & J.*, 151.

And any language evincive of a purpose to create a trust, will be sufficient to create one. And especially will Courts extend their aid in favor of creditors. 2 *Story's Eq. Juris.*, sec. 972; *Mory, Ex'r, vs. Michael,* 18 *Md.*, 240; *Fisher vs. Fields,* 10 *Johns.*, 504; 1 *Story's Eq. Juris.*, secs. 169, 170; *Magruder vs. Peter,* 4 *G. & J.*, 328.

Guided by these rules, let us look at the deed, its language and purpose. Is not its purpose to protect Edward and William Hamilton from loss on account of their suretyship? And it seeks to do this by conveying the property in trust to Francis W. Hawkins. It was, then, the intention to give Hawkins such an estate as would enable him to pay this loss *whenever it should occur,* whether the next day or the next year.

How could he do this, unless he had the power to mortgage or sell, and this of course carries the fee with it. *Sanders on Uses and Trusts,* (250.)

Nor is it necessary, in cases where creditors are the beneficiaries, that words of inheritance should be used, even if so in other cases. *Farquharson vs. Eichelberger & Trust,* 15 *Md.*, 63; *Spessard, et al. vs. Rohrer,* 9 *Gill,* 261; 4 *Kent,* 310–314.

Thus, then, we have a fee-simple estate vested in Hawkins in trust, to indemnify Edward and William Hamilton, *whenever* any loss *should occur* to them. But it is said that the trust was purely personal and limited to the life of Francis W. Hawkins. Here the rules of construction as to intention must again be the guide.

The very nature of the trust forbids any such construction. The *power of execution depended upon a future contingency*, which might or might not have happened in the lifetime of Francis W. Hawkins, and the purpose for which the trust was created can in no way be connected with *his* life or death. Thus, then, we have a fee-simple in Hawkins in trust, and his death before the execution of the trust. Courts will enforce such trusts. And where the trustee dies will appoint another. 1 *Story's Eq. Jur.*, sec. 98; 2 *Story's Eq. Jur., secs.* 976, 1061; *Spessard vs. Rohrer,* 9 *Gill*, 261; 4 *Kent,* 304, 310.

Especially where parties have had notice. 1 *Story's Eq. Jur. sec.,* 533.

As to the second point, are proper parties in Court?

It is said by the defendants that the use or trust established by this deed was executed by virtue of the Statute of Uses, in Edward and William Hamilton, and therefore they are the only parties to sue. If this is so, when was it executed? Certainly not before the contingency arose. *Sanders on Uses and Trusts,* (232.) Was it executed on the happening of the contingency?

Again, let the rule of construction be invoked as to intention, to be gathered from the whole deed. Was this intended to be more than a mortgage? And will the Court construe it to convey a fee-simple to Edward and William Hamilton, on their sustaining loss from said suretyship, rather than an estate in trust to Hawkins, to indemnify the sureties from loss and *pay* over *the surplus* to the grantor? *Dougherty vs. McColgan,* 6 *G. & J.*, 275.

If this be so, then the trustee had a special duty to perform, and the trust could not be executed by the statute in

the *cestui que trust.*    *Ware, et al. vs. Richardson,* 3 *Md.,* 549.

And it was competent for the trustee to sue.    *Lucas vs. McBlair,* 12 *G. & J.,* 14; *Sanders on Uses,* (363.)

But it is said by the defendants that the beneficiaries must be parties to this suit.    This is not so, because the other side can in no way be prejudiced by their absence, since their interest is represented by the trustee.    But it is too late to raise this question now, for it is at most technical and formal, and ought to have been raised by demurrer, plea or answer. *Story's Eq. Pl.,* secs. 237, 541, 542, 544.

And besides the defendants are now estopped by their agreement.    *Cromwell vs. Owings,* 6 *H. & J.,* 10; *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 187; 1 *Greenleaf's Evidence,* secs. 27, 186.

This is not a question of jurisdiction, and therefore not an attempt to confer it by consent.    *Elmendorf vs. Taylor,* 10 *Wheaton,* 152; *Mallow vs. Hinde,* 12 *Wheaton,* 193; *Mechanics' Bank of Alexandria vs. Seton,* 1 *Peters,* 306.

*Alexander B. Hagner* and *Frederick Stone,* for the appellees.

The decree should be affirmed:

There is no proper party complainant in the cause, and never has been.

The original complainant was "Francis W. Hawkins, *trustee,*" &c.    The deed exhibited with the bill was a conveyance of an undivided half of the maiden land of the wife of Francis P. Hamilton, "unto the said Francis W. Hawkins," without any words of limitation.    It was therefore simply a conveyance of *a life estate* in the wife's land, to continue only during the lifetime of the grantee, and was totally at an end when Francis W. Hawkins died.    But the estate thus conveyed to Francis W. Hawkins was to be held by him "*in trust for the use and behoof of* William and Edward Hamilton," with a *proviso* that the deed should be

void if Francis Hamilton should save them harmless from damage from the suretyship.

This *use* was at once *executed* in the *cestuis que use,* and no title or interest whatever remained in Francis W. Hawkins, which would authorize him to sue in a Court of Chancery in respect of the trust. The use was executed in the *cestuis que trust. Kenrick vs. Beauclerck,* 3 *B. & P.,* 175; *Ware, et al. vs. Richardson,* 3 *Md.,* 548, 550; *Nash vs. Ash,* 1 *Hurl. & Colt.,* 167; *Williams vs. Waters,* 14 *Mees. & Wels.,* 166; *Doe, on demise of White, vs. Simpson,* 5 *East,* 162; *Carter vs. Barnadiston,* 1 *P. Wills.,* 505.

And the trustee had no title to sue in a Court of Equity. No active duties were devolved upon him by the deed, and it created in him a mere dry legal estate. There was no power given to sell. *Hill on Trustees,* 229, 231, 316; 1 *Mad. Chy.,* (451;) *Williams vs. Lord Lansdale,* 3 *Ves.,* 757; *Duffy vs. Calvert,* 6 *Gill,* 487.

The *cestuis que trust* alone were competent to enforce their rights under the deed in equity. The Statute of Uses executed the use by conveying the possession to the use, and transferring the use to the possession, thus making the *cestuis que use* complete owners of whatever interest was conveyed by the deed. 2 *Shep. Touchstone,* 509.

The trust created by the deed was a *simple* trust, the nature of which was in no way qualified by the grantors. 1 *Preston on Estates,* 190.

But the right of the *cestuis que trust* to sue under the deed in equity, determined upon the death of Francis W. Hawkins, without any application having been made for a sale under the deed. That the defendants may make this objection at the final hearing is clear. *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 187; *Binney's Case,* 2 *Bland,* 99; *Estep vs. Watkins,* 1 *Bland,* 489; *Gibbs vs. Cunningham,* 4 *Md. Ch. Dec.,* 326; *Chambers vs. Chalmers,* 4 *G. & J.,* 438; *Tartar, et al. vs. Gibbs, et al.,* 24 *Md.,* 337; *Clason vs. Lawrence,* 3 *Edwards' Ch. Rep.,* 53.

An omission of the necessary party complainant is not a fault *in pleading*, but a failure upon the merits. *Coles vs. Forrest*, 10 *Beav.*, 557; *Adams' Eq.*, 314; *Phillipson vs. Gatty*, 6 *Hare*, 26; *Story's Eq. Pl.*, secs. 72, 75, 76, 77, 193, 195, 196, 207; *Adams vs. St. Leger*, 1 *Ball & Beat.*, 184.

The agreement to admit Josias Hawkins, the administrator, as plaintiff and to dispense with "the necessity of the joinder of any other party as complainant or defendant," cannot enure to give jurisdiction to the Court to decree relief to a party not entitled to relief. *Iglehart vs. Armiger*, 1 *Bland*, 528.

The agreement entered into in behalf of persons who were not proper parties to the cause, cannot in any event bind persons not then parties, and not privies in any way. *Hill on Trustees*, 194.

If the title conveyed to the trustee had been a fee-simple, it would, upon his death, have devolved upon the person who would have been his heir at Common Law. (*Art.* 47, *sec.* 24 *of the Code.*) And the administrator clearly had no interest in the suit in any way. But the present defendant cannot be bound by the previous agreement made with others, between whom and themselves no privity is alleged or proved to exist. This is not a cause where the Court may allow an *amendment* by making new parties.

The only complainant has no standing in Court. It is not a case where a new party may be *added*, and where the Court, to aid a meritorious case, may allow such further party to be brought in. To amend here, would be to make an altogether different case, by allowing a party, who has no right to be in Court at all, to bring in some other party who would claim in a different right. *Heighe vs. Farmers' Bank*, 5 *H. & J.*, 68; *White, et al. vs. White*, 5 *Gill*, 359.

It would be against all the analogies in cases of amendment, for it is always requisite that *one* of the original parties should be retained. *Code, Art.* 75, *sec.* 29.

The plea of limitations should be sustained; the claims exhibited are not properly proved, and the exceptions to the evidence are well taken.    *Hill on Trustees*, (263;)  *Green vs. Johnson*, 3 *G. & J.*, 390.

The culpable *laches* of the original complainant in waiting nineteen years after the execution of the deed, and eighteen months after the death of Samuel Chapman, before filing his bill; and the still more extraordinary *laches* of the successive complainants, in their conduct of the case until this late day, when so far as it can be understood from the record, the defendants are the third generation from the man who bought the maiden land of Mrs. Letitia Hamilton, certainly will not commend their cause to the favorable consideration of this Court.    *Hertle vs. McDonald*, 2 *Md. Ch. Dec.*, 128; *Chew vs. Farmers' Bank*, 2 *Md. Ch. Dec.*, 231, and 9 *Gill*, 361; *Kiddall vs. Trimble*, 8 *Gill*, 207; *Hutchins vs. Hope,* 7 *Gill*, 124; *Hill on Trustees*, (170,) (265;) *Alexander's Pr.*, 69; *Miles vs, Kelly*, recorded in *Liber G. E. and J. S. F. No.* 1, *folio* 259. *of "Opinions Unreported;" Robertson, et al. vs. Read's Adm'r et al*, 17 *Grattan*, 544; *Hercy vs. Dinwoody*, 2 *Ves., Jr.*, 93; *Alloway vs. Braine*, 26 *Beav.*, 580; *Sharp vs. Wright*, 28 *Beav.*, 152; *Harcourt vs. White*, 28 *Beav.*, 303.

BOWIE, J., delivered the opinion of the Court.

The counsel of the parties to this cause, in their briefs and arguments concede, that the main questions presented by the record are,

1st. Whether there are proper parties, which necessarily involves the true construction of the instrument sought to be enforced as a deed of trust.

2d. Whether the claims set out in the deed are barred by *laches* and lapse of time?

The original bill was filed in the County Court of Charles county, as a Court of Equity on the 1st of March, 1827, by Francis W. Hawkins, as trustee, for William · Hamilton and Edward Hamilton, executor of Edward, against Elizabeth

Chapman, widow of Samuel Chapman, and John G. Chapman and others, his children and heirs. The bill charged that Francis P. Hamilton and wife, *on the 8th of May*, 1809, executed to the complainant a deed of trust, for the purpose of securing and indemnifying the said William and Edward for certain securityships which they entered into for the said Francis P. Hamilton, as by copy of the deed therewith exhibited, and which it is prayed may be taken as a part of the bill, will appear.

The bill further charged, that in consequence of superseding those claims, Edward and William, in the life time of Edward, were compelled to pay the judgments.

That the land so as aforesaid conveyed became liable to other judgments and demands, which the said William and Edward Hamilton, anxious to save the said Francis P. Hamilton and wife, paid off.

The complainant charged, that no part of the money paid on these claims had been reimbursed, but Francis P. Hamilton had died insolvent, and that the said Hamilton's *cestuis que trust* relied on the land conveyed by the deed of trust aforesaid, which they claimed was liable for their whole disbursements.

It is further charged, that a certain Samuel Chapman, since deceased, (the husband and ancester of the defendants) some time after the execution and recording of the deed of trust, purchased the lands conveyed to the complainant, with full knowledge of the liabilities and their amounts, imposed on said lands, and estimated them in contracting for the same, as part of its price, and frequently promised the payment of the same, but has wholly neglected to do so.

The bill further charged, that Samuel Chapman died about eighteen months previous intestate, whereby the lands had descended to his widow Elizabeth and children, John G. Chapman, Etheldra, wife of Morgan Harris, and Henry Chapman, a minor, *who were in possession of the same.*

The complainant prayed, that the land and real estate mentioned in the deed of trust might be sold to pay and reim-

burse to the said William Hamilton and Edward, executor of Edward, deceased, the several sums of money so as aforesaid due and owing to them and their costs and charges, etc., and process against the widow and heirs of Samuel Chapman above named.

On the 28th of March, 1833, the joint and several answers of John G. Chapman, Elizabeth P. Chapman, Morgan Harris and wife, were filed. They admit they had been informed that a deed of trust had been executed by Francis P. Hamilton and wife to the complainant, to secure William and Edward Hamilton, "but they were not informed of the truth of this information," and deny all the material averments of the bill.

The deed of trust exhibited with the bill, after reciting that Edward Hamilton and William Hamilton have superseded for Francis P. Hamilton, five several judgments, (enumerating them,) and that the said Francis is desirous of securing them against any damage or injury which might arise in consequence of having become his security, witnesseth, that the said Francis and Letitia for and in consideration of the premises, have given, and by these presents do give, grant, etc., unto Francis W. Hawkins "*all their right, title and interest of and into*" the lands, etc., "in trust for the use and behoof of the above named Edward and William Hamilton; provided always and nevertheless, that if the said Francis P. Hamilton shall save Edward Hamilton and William Hamilton from all damage or injury which might arise from superseding said above recited judgments, that then and in that case, this indenture to be void, etc.; otherwise, to remain in full force and virtue in law."

This synopsis of the bill, answer and exhibit, is sufficient to present the questions depending on the construction of the deed.

It is contended on the part of the appellant, that the deed conveyed a legal estate in fee to Francis W. Hawkins, subject to a contingent, executory trust, to sell, and indemnify William and Edward Hamilton.

On the other hand, it is insisted by the appellees, that as the deed contains no words of limitation or inheritance, it conveyed an estate for life to the grantee in trust, for the use and behoof of Edward and William Hamilton, which use was executed in the *cestui que use,* and terminated with the life of Francis W. Hawkins.

The duration and nature of the estate created and conveyed by a deed depends often as much upon the intention of the grantor and the end to be attained, as upon the language employed.

The text writers and reports establish beyoud doubt that words of limitation or inheritance are not essential to create an estate in fee; nor is the nature of the estate conveyed, whether a trust or use executed, determined so much by the terms used, as the object to be effected. In *Hill on Trustees,* 455, it is said, "A trustee will take the fee without the word ' heirs,' when necessary for the trust." The same principle is announced in *Spessard, et al., vs. Rohrer, et al.,* 9 *Gill,* 262, where the deed conveyed lands without the word " heirs " to a trustee, with power to sell to pay debts.

" So an assignment of an interest in trust will carry a fee without words of limitation, when the intent is manifest." 4 *Kent,* 304. " The trustee, it is believed, had the power to dispose of the fee." . " It is not any estate or interest of the grantee in the deed of trust that is to pay the debts; it is the estate of the grantor from whom the estate is derived." 4 *Kent,* 263. The same doctrine is announced in *Farquharson vs. Eichelberger, &c.,* 15 *Md.,* 72, 73, where the case in 9 *Gill* is referred to and cited.

And whether the estate conveyed was a trust or use executed, is determined rather by the end to be attained than the language employed. "A gift or grant of property to a grantee or donee to be applied to a certain use or purpose, fastens a trust on the holder of the legal estate." *Hill on Trustees,* 65; *Malim vs. Keighley,* 2 *Ves. Jr.,* 335; *Moore vs. Darton,* 7 *Eng. L. & E.,* 174; *Ware, et al. vs. Richardson,* 3 *Md.,* 505.

It is obvious the object of the grantors was to indemnify their surety. The instrument was in the nature of a mortgage, with an executory trust, conditional upon the payment of the judgments referred to, vested in the trustee. In order to secure the Hamiltons from the damage or loss which they might incur in consequence of their suretyship, it was necessary the trustee, or grantee, should have a power to sell and convey in fee, which power, as well as the estate in fee, will be raised by implication.

Hence we conclude, that by virtue of the intention of the grantors and the ends to be accomplished, the deed conveyed to the grantee the legal estate, in fee, in the lands therein described, with power to sell and convey, for the benefit of the *cestuis que trust* on condition; which being a naked trust, unaccompanied with a beneficial interest, descended to the heir of Francis W. Hawkins at Common Law, as provided by the Act of 1831, ch. 311, sec. 11. *Vide Code Pub. Laws, Art.* 47, *sec.* 24; *vide Duffy vs. Calvert,* 6 *Gill,* 487; *Winder vs. Diffenderfer,* 2 *Bland,* 172, *(note B.)*

When Francis W. Hawkins, the original complainant, died, does not appear from the record. His death was suggested on the 30th of May, 1843.

An exemplification of letters of administration on his estate, issued by the register of wills of Charles county, on the 20th of August, 1840, was filed on the 7th of May, 1844, with an agreement of counsel of the same date, in which it is admitted that the complainant is dead, intestate, and that administration on his personal estate has been granted to Josias Hawkins, of Charles county; and that the cause shall be treated as regularly revived in his name against the defendants. "The necessity for the joinder of any other party as complainants or defendants being hereby dispensed with," etc.

The validity of this agreement by counsel, one of whom represented a stranger in interest in the cause, was incidently discussed, and it might have been material to be considered, but that its effect, and that of the order passed thereon, what-

ever it was, ceased with the life of Josias Hawkins, whose death was suggested 2d of March, 1850. In the interval, from 1844 to 1850, the cause was entitled, *Josias Hawkins, Adm'r of Francis W. Hawkins vs. John G. Chapman, et al.*

The legal estate in the premises, and the trust fastened on it by operation of law, did not devolve upon the personal representative of the deceased trustee. The appearance of the administrator therefore could not revive the cause. The case being remanded to the Circuit Court of Charles county, after the Chancery Court was abolished, John Hamilton, representing himself to be a party in interest in the case, and entitled to receive the money, for which it is claimed the land in the proceedings mentioned is responsible, filed his petition on the 12th of December, 1857, entitled, "In. the matter of *Hawkins, trustee, vs. Chapman and others*, alleging as follows : The death of Josias Hawkins having been suggested, and there being no trustee to conduct said proceedings, your petitioner respectfully prays your Honor to appoint a trustee to succeed the said Josias Hawkins, heretofore appointed by consent, to succeed the original trustee; which said trustee, when appointed, may be substituted to all the powers and rights of the former trustee." On which an order *nisi* was passed, appointing Josias H. Hawkins trustee, unless cause be shown on or before the first Monday in February, 1858.

The defendants, on the 11th of May, 1858, filed several objections—among others, "That if the aforesaid trust is transferable, (which these defendants do not admit,) the Act of Assembly directs who shall execute the trust."

On the 29th of May the administrators of Josias Hawkins filed their renunciation of the trust, and on the 28th of June, 1858, it was, by the Circuit Court of Charles county in Equity, ordered, " that no cause to the contrary having been shown," Josias H. Hawkins be appointed trustee in the above matter, and that the above case be and is hereby revived in the name of Josias H. Hawkins as plaintiff. The intermediate proceedings, from the suggestion of the death of the

original complainant to the order appointing Josias H. Hawkins trustee, were not authorized by the Acts of Assembly regulating suggestions of death, and substituting a petition and summons instead of a bill of review, or by the rules and practice in Chancery. The application to revive upon suggestion, as well as by bill, must be by the legal representative of the complainant, according to the subject matter. If real estate be in controversy the heir at law must be made a party, or cause shewn why he is not; if personal estate only is involved, the executor or administrator must be made complainant. "The Court is to be satisfied of the death, and of the applicant's being the legal representative, which cannot be done without some proof." *Hall vs. Hall,* 1 *Bland,* 131.

The Act (1820, ch. 161) has done nothing more than to authorize a party to pursue the course prescribed, in place of a bill of review. It is a new course of proceeding, which can only be used in place of a mere naked bill of review, by which the *person* in whom the title is vested, is the sole fact to be ascertained, and nothing more. *Hall vs. Hall,* 1 *Bland,* 132.

It is not intended to intimate that a Court of Equity would not have power, were a proper case presented, to appoint a trustee, upon the incapacity, refusal or neglect of the person upon whom the law cast the duty of discharging the trust, being made to appear, due notice by summons having been given. But the petition of John Hamilton did not present such a case; it was evidently founded upon a misapprehension and misrepresentation of what had been done in the premises. Josias Hawkins had not been appointed trustee, and if he had been, without the consent of the heir at law, or his refusal to act, the appointment would have been equally irregular and nugatory. Nor could the appointment of Josias H. Hawkins have been made in pursuance of the Act of 1785, chap. 72, sec. 4. The *ex parte* proceeding by petition under that Act applies only to cases "where a testator has left real or personal estate to be sold for the payment of debts or other pur-

7                    v. 36

poses, and there is no one appointed to make the sale; or he who has been appointed to do so neglects or refuses to execute such trust. This, it is proper to recollect, is not a case where the testator has left his estate to be sold for any purpose. And it has been provided, that on the death of a trustee, having no beneficial interest in land, the heir at Common Law shall succeed to the trust estate so held." 1831, *ch.* 311. *sec.* 11, *per Bland Chr.*, note (*b*,) to *Winder vs. Diffenderfer*, 2 *Bland*, 172.

" The general rule in cases of trust is, that in suits respecting the trust property, brought either by or against the trustees, the *cestuis que trust*, (or beneficiaries,) as well as the trustees, are necessary parties." *Story's Eq. Plead.*, *sec.* 207. * * * "If all the trustees are dead, and the estate is an estate of inheritance, the heir or other representative in the realty of the survivor should be made a party." *Ibid*, *sec.* 211.

In this case, there is nothing to shew that the trustee died without heirs; the presumption of law would be, that he left lineal or collateral heirs, some of whom, at Common Law, would be seized of the legal estate in the premises; and the *cestuis que trust* are not pretended to be made parties. The bill of review, or proceedings in the nature of a bill of review, must be filed by those in privity with the deceased complainant, either as heir, executor or administrator.

Josias H. Hawkins does not appear to have stood in either of these relations to the original complainant, and therefore was not entitled to become complainant under the provisions of the Acts of· Assembly, or the general principles of Courts of Equity. "It is settled that the complainant's right to revive should appear at the hearing." *Alex. Ch. Prac.*, 105.

The objection to the appointment of a trustee taken in answer to the petition of Hamilton, and renewed by exceptions at the hearing, is not a formal but a substantial objection. It is based upon the principle of natural justice, that the rights

of no man should be determined without a hearing; and the rule of Equity, that all parties interested in the subject of the suit ought to be made parties, to prevent multiplicity of suits, and put an end to litigation. It is so material, that it may be taken by demurer, plea, answer, or exception, at the hearing. 1 *Story's Eq. Plead.*, 76; *Tartar, et al., vs. Gibbs, et al.*, 24 *Md.*, 337; *Salmon vs. Claggett*, 3 *Bland*, 143.

There is such a total absence of the proper parties complainant in this cause, that the Court could not bind either the legal or equitable claimants under the deed of trust by a decree; "*non constat*," that they have any cause of action; they have not appeared in Court, or asked to revive the suit; they are not parties to the record. This brings us to the consideration of the second point, *laches* in the institution and prosecution of the suit; not in bar of the action, as there is in fact no complainant in Court, but incidentally, in connection with the question whether the purposes of justice would be advanced, by permitting further proceedings in the cause, by amendment of the pleadings and making new parties.

"What will constitute such a lapse of time and *laches* as will bar the right of the parties to recover on a claim purely equitable, all the authorities say must depend upon the particular facts and circumstances of each case." *Hanson and Wife vs. Worthington*, 12 *Md.*, 441.

In *Glenn, Adm'r of Lindenberger, vs. Hebb's Adm'r, et al.*, 17 *Md.*, 281, 282, much stress was laid, in reply to the defence of *laches*, on the fact that the defendant lived until 1846, and being in Court called to account, with all the *material in his* possession by which an account could be taken, could himself take no advantage of the apparent *laches* of the complainant; especially, after the decree to account — that decree in effect calling on both parties to be active in the conduct of the cause.

If the position of the parties in that case had been reversed; the defendants representing a deceased ancestor,

against whom the claim was asserted after the ancestor's death; devoid of all knowledge of the original transactions which had transpired seventeen years previously; deprived of all means of making defence by lapse of time; without any active control in the conduct of the cause; the inference is irresistible the conclusion of the Court would in that case have been in favor of maintaining the defence of *laches*.

In remanding a cause, the Court must see that the purposes of justice will be advanced by permitting further proceedings, in accordance with the principles of equity and policy of the law.

Courts of Equity have established the doctrine, that after a great lapse of time and long peaceable possession, they ought not to interfere to grant relief; for the policy of the law is to give quiet and repose to titles; and Courts of justice ought not to countenance *laches* or long delays on the part of claimants. Indeed, after a great lapse of time, Courts of Equity will raise a presumption of some legal or equitable extinguishment of the adverse title, if the circumstances of the case will enable them to support it. *Story's Eq. Plead.*, sec. 813, (3.)

In the case of *Nelson against The Hagerstown Bank*, 27 *Md.*, 51, an equitable mortgagee was held to be barred by *laches* in not setting up a claim which accrued about 1851, before 1859; this Court commenting on the facts use this language: "Miss Nelson has not attempted to account for or excuse her delay. As she has slept upon her rights and not used due diligence to enforce them, the subsequent creditors have very properly relied on *laches* and lapse of time to defeat her secret equity."

The Court in the same case, refers to and cites the decision of the Supreme Court in the case of *McKnight vs. Taylor*, 1 *Howard*, 168; a case which resembles that before us in some material points. That, like the present, was a bill filed by a trustee, to sell real estate, to satisfy certain creditors named

in the deed. Chief Justice TANEY delivering the opinion of the Court says: "In relation to this claim, it appears that nineteen years and three months were suffered to elapse before any application was made for the execution of the trust by which it was secured. No reason is assigned for this delay, nor is it alleged to have been occasioned in any degree by obstacles thrown in the way by the appellant. As it stands, it would seem to have been the result of mere negligence and *laches.*"

Distinguishing the cases barred by limitations, from those in which *laches* is allowed to be a sufficient defence, the Chief Justice in the same case lays down these propositions:

"In matters of account, where they are not barred by the Act of Limitations, Courts of Equity refuse to interfere, after a considerable lapse of time, from considerations of public policy and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost," * * * the true rule is laid down in *Piatt vs. Vattier*, 9 *Pet.*, 416, where it is said: "Nothing can call a Court of Chancery into activity but conscience, good faith and reasonable diligence; where these are wanting the Court is passive and does nothing." *McKnight vs. Taylor*, 1 *Howard*, 168.

The deed of trust sought to be enforced in this case was executed on the 6th of May, 1809; the claims intended to be secured by it, appear from the exhibits to have been paid the *cestuis que trust,* in March, 1810; the bill was filed the first of March, 1827, and the cause brought to final decree in 1871.

It thus appears that seventeen years elapsed before any attempt was made to execute the trust, and then the bill was filed against the widow and heirs of the purchaser, twelve or eighteen months after his death, and several years after the purchase; forty-four years have since been passed in litigation. In ordinary cases, it would be proper to remand a cause for the purpose of making new parties; but, in a case

marked by such extraordinary delay in its commencement and prosecution, without any apparent sufficient cause, it would violate the best principles of public policy and jurisprudence, in our judgment, to remand it for further proceedings.

The decree dismissing the bill will therefore be affirmed.

*Decree affirmed.*

(Decided 21st May, 1872.)