RICHARD HARDISTY *vs.* RICHARD T. HARDISTY, and
others.

*Partnership—Death of Partner—Settlement—Laches of Sur-
viving partner—Primary liability of Personal estate for
Debts of decedent.*

R. H. and J. T. H. formed a co-partnership in 1853, which con-
tinued until the 10th of July, 1877, when it was dissolved by the
death of J. T. H. The deceased partner left a will appointing
his wife and R. H., his co-partner, his executors, and devising
and bequeathing his estate, real and personal, to his wife during
her life, and at her death to be equally divided among his chil-
dren. The estate of the deceased partner was duly settled in the
Orphans' Court, and the sum of $7,693.21, being the balance left
after the payment of debts, was paid over to the widow in
accordance with the will, but in the administration accounts no
notice was taken of the testator's interest in the partnership
property. On the 10th of August, 1878, R. H. sold the stock of
goods, and divided the proceeds equally between himself and the
widow of the deceased partner. Upon proceedings taken after
the death of the widow, the real estate which the firm owned
and held as tenants in common was sold. A bill was filed on
the 1st of October, 1886, by the children of J. T. H., the de-
ceased partner, against R. H., the surviving partner, to compel
the latter to account and settle the partnership affairs of the
firm. The defendant in his answer claimed that upon a proper
accounting the firm was indebted to him in the sum of $1,746.98,
and when testimony was being taken, he produced as the foun-
dation of his claim a sealed promissory note of J. T. H. to the

firm dated 1st of January, 1861, for $2,727.56, payable one day after date, upon which were indorsed payments amounting to $1,731.68. This note was produced for the first time on the 11th of November, 1891, thirty years after its date, nearly fifteen years after the death of the maker and the dissolution of the firm, and eighteen years after the last credit. HELD:

1st. That as the sum of the various credits indorsed on the note amounted to a little more than half of the face value thereof, it might well be inferred from all the facts in evidence that the payments so credited on the note were at the time they were made intended by the parties as a payment to the defendant of his half of that particular partnership asset; and this inference was strengthened by the fact that no entries of these payments were found upon the books of the firm.

2nd. That the defendant had been guilty of neglect and delay in enforcing his claim, and a Court of equity would not aid him.

3rd. That the personal estate being the primary fund out of which a claim like that of the defendant should be paid, and it appearing that such estate of the deceased debtor was more than sufficient to pay this and all other claims, it could not be allowed as against the proceeds of his real estate. (Sec. 188 of Art. 16 of the Code.)

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, and BRISCOE, J.

*F. Snowden Hill*, for the appellant.

The appellees contend that J. T. Hardisty, when he closed his account with the firm by his note, became an ordinary creditor of the firm, and entitled to plead limitations as such. Under these circumstances, this would not be true had the note been for Richard Hardisty's share, and to his order, there being no adjustment of

the partnership affairs.   *Royster, Ex'r vs. Johnson*, 73
*N. C.*, 474.

And it certainly is not true in the case of this note
drawn to the order of the firm, growing out of the
business of the co-partnership, and without any adjust-
ment of said business being made.   J. T. Hardisty could
not plead limitations to this note, in this accounting,
and his children, who represent him, cannot.

"A man cannot bring an action at law against him-
self.   The same natural person cannot be both plaintiff
and defendant on the record."   *Grahame vs. Harris*, 5
*G. & J.*, 489; *Hamilton vs. Conine, et al.*, 28 *Md.*, 643;
*Lindley on Partnership*, secs. 115, 567; *Davis vs. Merrill*,
51 *Mich.*, 480.

"The balances (on partners' accounts) are not debts
owing by him to his co-partners.   The balances are
owing by and to the *firm*, and each partner being in-
cluded in the firm is to the extent of his share his own
debtor and creditor."   *Lindley on Partnership*, secs. 111,
396, 400, 401.   As to laches, see *Chouteau vs. Barlow*,
110 *U. S.*, 238; *Sangston, et al. vs. Hack, et al.*, 52 *Md.*,
173.   As to old balances left off new books, see *Bucking-
ham vs. Ludlum*, 29 *N. J. Eq.*, 345.   As to filing note in
Orphans' Court, see *Lindell, Ex'x vs. Lee, et al.*, 34 *Mo.*,
103; *Gleason vs. White*, 34 *Cal.*, 258.

*Charles H. Stanley*, for the appellees.

It is no answer that Richard Hardisty was the party
to pay and the party to sue.   The Code allows an ad-
ministrator his claim when passed, "and every such
claim shall stand on an equal footing with other claims
of the same nature."   *Art. 93, sec. 96, of the Code.*

The claim could not have been passed without prov-
ing it as required by statute, and possibly without the
notice of the executrix; but the mere fact that Richard
Hardisty occupied the dual position, cannot certainly

relieve him of the necessity of proving his claim as any other creditor, and prevent the Statute from running.

The appellant was guilty of laches, if not fraud. He was one of the executors; the personal estate was largely in excess of this claimed indebtedness; the appellant was the surviving partner; the partnership had been dissolved by death, and yet with this paper in his possession he never filed it or claimed it during the life-time of the executrix; never asked its payment or referred to it until forced in this Court as a defendant in an action for an account, and then did not set up the note in his answer. The claim is a fraud, but if not a fraud is barred by laches, if not by limitations.

As to what constitutes laches must depend upon the circumstances surrounding a particular case. The principle has been applied in cases apparently not so strong as this case, and from the earliest ages Courts of equity have refused their aid to those who neglected for an unreasonable length of time to assert their right. Courts of equity will not sustain stale demands. *Chew vs. Farmers' Bank*, 2 *Md. Ch.*, 231; *Elmendorf vs. Taylor*, 10 *Wheaton*, 152; *Piatt vs. Vattier, et al.*, 9 *Peters*, 405; *Hall, Adm'r, &c. vs. Clagett*, 48 *Md.*, 223; *Hawkins vs. Chapman*, 36 *Md.*, 101; *Donaldson's Ex'rs vs. Raborg, Adm'x, &c.*, 28 *Md.*, 36.

"Independent of the Statute of Limitations, the equity rule, that the Court will not entertain stale demands, is applicable, and although the Statute of Limitations may not have run, a claim may be refused for laches, which has caused the loss of defendant's evidence. The death of witnesses and loss of evidence, are important elements in determining whether or not lapse of time constitutes a bar." Presumption of payment arises. 2 *Bates' Law of Partnership*, sec. 952; *Gover, et al. vs. Hall, &c.*, 3 *H. & J.*, 43; *Codman vs. Rogers*, 10 *Pick.*, 112; *Arnett vs. Finney*, 41 *N. J. Eq.*, 147; *Ray vs. Bogart*, 2 *Johns. Cases*, 432.

Taking the books of the firm as evidence of the debt claimed by the appellant—and it is his only evidence, as the note is not pleadable, but is dead—what do they show? That a note existed, 1st of January, 1861. That Richard Hardisty charged it up in 1870, but had to erase it, thereby admitting it was wrong, and that he did charge it in July, 1877, when his partner was at the point of death, and could not make him again erase it.

The note shows for itself that John T. Hardisty paid one-half at least. The money paid went to the appellant and was never charged as cash received by the firm. The books do not show that one dollar of it was paid into the firm, but the appellant admits, and the proof shows these payments were made.

The personal estate is the primary fund out of which the debts should be paid.

If the note for which payment is now demanded was in reality a debt due by John T. Hardisty to the firm of J. T. & R. Hardisty, it was an asset in the hands of Richard Hardisty, the surviving partner, and was collectible from John T. Hardisty's personal estate, which was largely more than solvent. He did not file it against the estate, claim it or bring it home to the knowledge of the executrix. But when called upon to account, he claims it against the real estate sold in this cause, which has descended to the heirs-at-law, namely, the one-half interest of John T. Hardisty. No creditor could hold this real estate or any real estate of John T. Hardisty for the debt, as his personal estate was more than sufficient. *Sec.* 188 *of Art.* 16, *of the Code,* and authorities there cited.

The excuse given by his counsel that as surviving partner he would be plaintiff, and as executor defendant, surely cannot avail to the extent that limitations would never apply, for if so, any executor or adminis-

trator, if a creditor, might apply the personal estate as he chose, and after any lapse of time, hold estates devised or descended for his debt in the hands of the devisee or heir-at-law.

This appellant is barred by laches if not by limitations, by reason of the fact that he did not claim it in 1878, when he sold the goods and paid one-half to Mrs. Hardisty, if for no other reason, as she naturally would have known of the debt if it existed, and not the plaintiffs in this case; and it is insisted that the circumstances surrounding the case point to the fact that it was kept back purposely by the appellee, and the Court must under any circumstances apply the principle, *"vigilantibus non dormientibus subveniunt leges."*

FOWLER, J., delivered the opinion of the Court.

The appellant, Richard Hardisty, and John T. Hardisty, the father of the appellees, were co-partners, and carried on a large business at Collington, in Prince George's County, in this State. The partnership was formed in 1853, and continued until the 10th of July, 1877, when it was dissolved by the death of John T. Hardisty.

The deceased partner left a will appointing his wife executrix, and his brother and co-partner, executor, and devising and bequeathing all his real and personal property to his wife during her life, and at her death to be equally divided among his children, who are the appellees, their mother having died.

The estate of the deceased partner was duly settled in the Orphans' Court of Prince George's County, and the sum of $7,693.21, being the amount which remained after the payment of debts, was passed and paid to his widow in accordance with the will, and in the administration accounts there is no notice taken of the testator's interest in the partnership property. The business

was continued by the appellant, Richard Hardisty, but whether as surviving partner or on his own account does not clearly appear.    However, on the 10th August, 1878, he sold the stock of goods and divided the proceeds equally between himself and the widow of his deceased partner—each of them receiving the sum of $2,821.15.

A few years after this transaction Mrs. Hardisty died, and it appears that upon proceedings taken for that purpose, the real estate which the firm owned and held as tenants in common was sold.    The bill in this case was filed by the appellees to compel the appellant to account and settle the partnership affairs of the firm of J. T. & R. Hardisty, of which their father and the appellant were the only members.    The appellant answered, admitting many of the allegations of the bill, but alleged that upon a proper accounting it would be found that the firm was indebted to him in the sum of $1,746,98. Testimony was taken, when for the first time the appellant produced as the foundation of his claim set out in the answer, the following promissory note:

"$2,727.56.            COLLINGTON, Jan. 1st, 1861.

One day after date I promise to pay to the order of J. T. and R. Hardisty, two thousand, seven hundred and twenty-seven $\frac{56}{100}$ dollars, for value received, as witness my hand and seal.

(Signed,)       JOHN T. HARDISTY.    [SEAL.]"

Upon this note were endorsed a number of payments, which amounted to $1,731.68, which is a little more than half of the note and interest.    The expert accountant, who testified on behalf of the appellant, gives the following testimony in regard to this note and the account of John T. Hardisty, based upon his examination of

the books of the firm. "The note is dated January 1st, 1861, for $2727.56, payable by J. T. Hardisty, and is in settlement of an account that had been running since January 1, 1859, between John T. Hardisty and the firm, and is found on page 388 of the ledger; I next see an entry on ledger, page 716, in John T. Hardisty's account, which reads as follows: To balance on note Jan'y 1, 1870, $——— figures erased but which look like $1796.33, but which I see by memorandum on the note, but scratched out, $1796.53. I next find it in ledger on page 805, in account of John T. Hardisty under date of July 1, 1877, to balance on note (to date) $2234.57, and that balance has been entered into the accounts as I have made them up." From the testimony of Mr. Ayers, the expert accountant who testified on behalf of the appellees, we learn that the note in question appeared in three places on the books of the firm, first, where it is stated to have been given by the deceased partner in settlement of his account to the firm to January 1, 1861. Then on January 1, 1870, it was apparently charged to his account and afterwards *erased;* "such cancellation," says the witness, "being correct, as the amount is not included in the addition on the ledger." A part of the note subsequently appears, continues this witness, where J. T. Hardisty is charged with $2234.57.

These two witnesses therefore substantially agree as to the facts as they appear from the books of the firm, although they came to very different conclusions, one of them having included and the other excluded the balance claimed to be due on the note in stating the accounts.

By agreement of counsel all claims for a decree for account of the partnership business have been waived, and the only question submitted to us is whether the Court below was correct in rejecting the claim of the appellant made by him against *the proceeds of the sale* of

the real estate of the firm, based upon the note of January 1, 1861, for the sum of $2727.56.

We have thus fully stated the facts because in our opinion the controlling question is whether the appellant has been guilty of such *laches* as will debar him from setting up any claim on the note above mentioned.

It will be remembered that the appellant was one of the executors of J. T. Hardisty, who died in 1877, and that after the payment of all his debts, this appellant, as executor paid over to the legatee the sum of nearly $8000. And in 1878, when he sold the stock of goods belonging to the firm, he paid to the widow of his deceased partner about $3000. On neither of these occasions did he make any claim based on this note, or a suggestion even that he had a claim of any kind against the estate of his brother. And then, too, when he filed his answer to the bill in this case, in which the appellees claim there was a large sum due by him to them on account of the partnership transactions, he failed to disclose the very important fact that he held the note, although he did set up a general claim that upon a proper accounting a balance would be found to be due him by the firm. The note is produced for the first time on November 11, 1891, thirty years after its date, nearly fifteen years after the death of the maker and the dissolution of the firm, and eighteen years after the last credit. The sum of the various credits endorsed on the note amount to a little more than half of the face value thereof with interest, and it was suggested, and we think with some reason, that it may well be inferred from all the facts in evidence that the payments so credited on the note were, at the time they were made, intended by the parties as a payment to the appellant of his half of that particular partnership asset. This inference is strengthened by the fact that no entries of these payments are found upon the books of the firm.

But whether this be so or not, we think there can be no question that the appellant ought not now to be allowed to set up this claim after such a great lapse of time.   The effect of this apparently gross neglect and great delay in enforcing his rights, if he had any, is sought to be avoided by the suggestion, that during all this time the appellant was either the co-partner or the executor of the maker of the note, and that in neither case could he enforce his claim.

Assuming, without deciding, that during the continuance of the partnership, the appellant could not, under the circumstances in this case, sue his co-partner in a Court of law, yet that co-partnership was dissolved in 1877 by the death of J. T. Hardisty, and it cannot therefore be contended that during the past fourteen years any disability to sue has existed by reason of the partnership.   And although it is true the appellant was named as joint executor of the will of his late partner, yet it was entirely optional with him whether he should place himself in a position which deprived him of the power of enforcing his own or the firm's rights against the estate of the deceased.   If he found he could not, while occupying the position of executor, do his whole duty as surviving partner, he should have renounced, and thus have placed himself in a position to settle promptly the firm business, and if necessary, to call the personal representatives of the deceased partner into a Court of equity for that purpose.

The appellant has been guilty of neglect and delay in enforcing his claim, and a Court of equity will not aid him.   *Nelson vs. Hagerstown Bank, et al.,* 27 *Md.,* 51; *Hawkins, Trustee vs. Chapman, et al.,* 36 *Md.,* 83.

There is another objection to this claim which appears to be fatal to it.   The personal estate is the primary fund out of which debts like this of the appellant's is to be paid, and the effort here is to have this debt paid out of the

proceeds of the debtor's real estate, while it appears that his personal estate was more than sufficient to pay this and all other claims.   Art. 16, sec. 188 of the Code.

*Decree affirmed, with*
*costs to the appellees.*

