Noble *vs.* Turner, *et al.*

(Decided 6th December, 1888.)

---

HENRY A. NOBLE *vs.* ROBERT TURNER, and others.

*Corporations—Assignment of Shares of Stock as Collateral— Attachment and Sale of Stock—Relief in Equity—Laches— Demurrer.*

The assignment and delivery, as collateral, of certificates of stock transferable on the books of a corporation, on presentment, properly indorsed, passes an equitable title only, until perfected on the books of the corporation.

In 1876, B. obtained a discount from a Bank, and deposited certain shares of stock as collateral security for the payment of his note. B. failed to pay his note, and N. the indorser, was compelled to

Noble *vs.* Turner, *et al.*

pay it, which he did by partial payments from time to time; and on the 1st of October, 1883, he finally paid the note, and received from the Bank the collateral, but no transfer was made upon the books of the corporation, and no notice was given of any claim of the Bank or of N. In 1879, these shares of stock were attached and sold as property of B. the assignor, and a transfer on the books was made by the sheriff to T. the purchaser, as authorized by statute (Code Art. 10, sec. 19, and Art. 26, secs. 205, 206, as amended by the Act of 1868, ch. 471;) and T. was dealt with and treated as a member of the corporation in the place of B. the original holder of the stock, and neither T. nor the corporation had any knowledge of any claim of the Bank or of N. In November, 1886, a bill was filed by N, for a cancellation of the stock issued to T. and for a transfer by the corporation of the original shares of stock assigned to the Bank. HELD:

That, in the absence of circumstances excusing and explaining the complainant's delay in asserting his rights, he was not entitled to any relief in equity; and this defence could be taken by demurrer to his bill.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Court below (PHELPS J.,) sustaining the demurrer of the defendants, and dismissing the complainant's bill, and petition to amend. The case is stated in the opinion of the Court.

The cause was argued before MILLER, IRVING, BRYAN, and McSHERRY, J.

*William L. Marbury,* for the appellant.

Turner, in the attachment proceeding, only purchased such legal title and interest as Bradley had at that time; and as Bradley had at that time transferred the certificates as collateral for his debt, the legal title was in his transferree, although the shares continued in the name of Bradley on the books of the company.

*Finney's Appeal*, 59 *Penn.*, 398; *Commonwealth vs. Watmough*, 6 *Whart.*, 138.

If, at the time Turner sued out his attachment, the sheriff had been notified that Bradley had transferred the stock, he could not have sold without making himself liable in damages. This was expressly held in 6 *Whart., supra.* And it must follow that Turner bought *nothing* in the attachment proceedings, as Bradley had no legal estate in the stock at the time of the execution, and has had none since; in other words, the stock was not liable to attachment at the suit of Bradley's creditor. *United States vs. Vaughan, et al.*, 3 *Binney*, 394; *Cowean vs. The Guild Farm Oil Co.*, 3 *Daly*, 218; *Smith vs. American Coal Co.*, 7 *Lansing*, (*N. Y.*) 317.

The Federal Courts, without exception, have held that the unregistered transference of stock in national banks is protected against subsequent execution or attachment. *Continental Nat. Bank vs. Eliot Nat. Bank*, 7 *Federal Rep.*, 369; *Scott vs. Pequonnock Nat. Bank*, 15 *Federal Rep.*, 494.

As the interest remaining in Bradley in this stock at the time Turner sued out the writ of attachment against it, was only an equitable estate in personal property, it could not be seized and sold in such a proceeding. *Martin vs. Jewell, et al.*, 37 *Md.*, 530.

In all the cases, it seems clear that the defence of laches has only been allowed where there has been some change in the relative attitude of parties, or some great lapse of time after discovery of mistake which is afterwards sought to be remedied.

A long silence after the discovery of a right, a delay of three years in bringing a bill in equity to enforce a charge upon land created by a will, is not such laches as will defeat the plaintiff's right, if there has been no change in the defendant's position by reason of such delay. *Kidd vs. Powers, &c.*, 136 *Mass.*, 277, 278.

---

Noble *vs.* Turner, *et al.*

---

*J. Alexander Preston*, for the appellees.

The Statute of Limitations can be availed of as a defence by demurrer to the bill, where no facts or circumstances are alleged to relieve the claim from the operation of the Statute. According to the allegation of the amended bill, on the first day of October, 1883, "the plaintiff's equity was fully ripe," to quote from the language of Judge PHELPS, according to the plaintiff's own admission. *Belt vs. Bowie*, 65 *Md.*, 355; *Story's Equity Pleading*, secs. 503, 813, (*9th Ed.*); *Rolfe vs. Gregory*, 31 *Law Journal*, 711; *Maxwell vs. Kennedy*, 8 *Howard*, 210; *National Bank vs. Carpenter*, 101 *U. S.*, 567; *Lansdale vs. Smith*, 106 *U. S.*, 391; *Woollensak vs. Reiher*, 115 *U. S.*, 97; *Badger vs. Badger*, 2 *Wallace*, 87; *Glenn vs. Clark*, 53 *Md.*, 580; *Nelson vs. Hagerstown Bank*, 27 *Md.*, 74; *Smith vs. Clay*, 3 *Bro. Chan. R.*, 639.

IRVING, J., delivered the opinion of the Court.

The question for decision in this case arises upon demurrer to the appellant's bill, which the Circuit Court of Baltimore City sustained, and accordingly dismissed the bill.

The facts averred in the bill and the amended bill are as follows: The appellant on the seventh of November, 1876, endorsed the note of one Jerome Bradley for two thousand dollars, in order that it might be discounted by the Jenkintown National Bank, which was an institution doing business in Pennsylvania. At the time that discount was asked and secured, Jerome Bradley deposited with the bank certain shares of stock in "The Odorless Excavating Apparatus Company of Baltimore City," which is a corporation, as collateral security for the ultimate payment of the note discounted. The maker of the note failed to pay the same, and appellant was compelled to pay it, which he did by partial payments from time to time; and on the first

day of October, 1883, he finally paid the note and received from the bank the collaterals, viz., the stock in the "Odorless Excavating Company," which Bradley had assigned the bank as collateral, accompanying the same with power of attorney to make all necessary transfers. The certificate of stock just preceding the attestation clause, has these words "Transferable on the books of the company on return of this certificate, with assignment thereon endorsed."

Subsequently, about eighteen months after the discount of the note and the pledging of the certificates as collateral to the bank, the bill charges that the appellee Robert Turner. a citizen of Baltimore, sued out a writ of attachment from the Superior Court of Baltimore City against Jerome Bradley as a non-resident debtor, under which attachment these shares of stock in the "Odorless Excavating Apparatus Company of Baltimore City" were levied upon, seized and attached, and judgment of condemnation was procured, so that on the twentieth day of February, 1879, the shares of stock were sold for the sum of seven hundred and fifty dollars, and the sheriff transferred the same on the books of the company to Robert Turner, the purchaser, to whom new certificates were issued by the company. The appellant contends that he had the title to the stock and a valid lien thereon by virtue of the assignment and delivery of the stock to the bank and then to him, subject to which the appellee Turner bought; and therefore he prays for a cancellation of the certificates issued to Robert Turner, and that the "Odorless Excavating Apparatus Company" may be compelled to transfer the original shares of the stock assigned to the bank (and afterwards delivered up to the appellant,) on their books to the appellant, and that a trustee may be appointed to sell for his benefit.

It is not pretended that any of the appellees had any notice or knowledge of the assignment by Bradley, to the Jenkintown Bank, of the stock as collateral; or that the bank or this appellant ever applied to the "Odorless Excavating Apparatus Company" to have the stock transferred on the books of the corporation until the filing of this bill.

By the assignment and delivery of the certificates to the bank it became, *in equity*, the owner of the stock. As between the parties to the transaction, the title effectually passed, for assignment on the books could be enforced; but it was an *equitable title* only; and this Court so decided in *Balto. Retort and Fire Brick Co. vs. Mali*, 65 *Md.*, 96–97, and *Swift vs. Smith*, 65 *Md.*, 435.

While *inter partes* (*i. e.* the assignor and assignee,) the provision for transfer on corporation books is treated as unessential to equitable title, yet as against the corporations or third parties, it is essential, and the assignment is imperfect and executory unless *perfected* on the books of the corporation. It is essential to the corporation to know who are its members and entitled to the dividends which may be declared; and this provision is its protection. Even in *Cowean vs. The Guild Farm Oil Company*, 3 *Daly*, 218, upon which special reliance was placed by appellant's counsel, the Court expressly recognizes the provision for transfer on the books of the corporation as intended for the protection of the corporation, and enforceable for that purpose; but as the delay, in that case to comply with it, had not led the corporation into doing any act prejudicial to itself, the transfer was *required* to be made. There the corporation had notice of the assignment and also of the attachment which was there sought to be made finally effectual by transfer on the books. Here the bill avers attachment proceedings not only perfected by judg-

ment, but actually executed through *fi. fa.* and sale of the stock. At the time when such proceedings were availed of, the 19th section of Art. 10, of the Code authorized the attachment and condemnation of stock notwithstanding it might be under mortgage or pledge. The Act of 1886, which was under consideration in *Morton vs. Grafflin,* 68 *Md.,* 545, and was controlling in that case, had not been passed. There is no question here of regularity in the proceedings by which judgment of condemnation was secured. *Fieri facias* is alleged to have issued, and under it a sale of the stock was effected; and it is also averred that the sheriff transferred the stock on the corporation books to the purchaser. This he was authorized and required to do, and the corporation was required to allow to be done by sections 205 and 206 of Art 26 of the Code, as amended and re-enacted by Act of 1868, ch. 471. That having been done the corporation issued new certificates of stock in place of the old to the purchaser, and for more than seven years Turner had been dealt with and treated as a member of the corporation, in the place of Bradley, the original holder of the stock which had been sold. Bradley was a non-resident, and the certificates themselves could not be reached and brought by the sheriff to the company for transfer. For that case the law made the provision that the company, on demand, should give the sheriff the numbers of the stock certificates held by the person who was pursued by attachment. In the absence of any thing to the contrary, we must assume the proceeding regular, and that by those numbers they were levied on and returned to the Court, and by those numbers condemned and sold. The transfer was made on the books of the company by the sheriff in pursuance of the statute, which, to that extent, in such case, did away with the need of the certificates for the transfer, as required on

the certificates. For seven years the purchaser under the attachment, and the company—the corporation—had been acting under the protection of legal proceedings effecting a transfer of the stock, and during all that time the bank had not made a sign of having any lien on the stock. For full three years after the appellant procured surrender of the stock collaterals, he was silent, and asserted no right to or interest in this stock. In consequence of the inaction and laches of the bank, under which he claims by subrogation, the corporation has been without notice of the pledge of the stock to the bank; and has been compelled by law, to recognize the rights of another who, by legal proceedings and purchase under them, had become entitled to have the stock transferred on its books to him, and it has issued him new stock in lieu of the old, which he bought by legal description, but which could not be surrendered, because possession was not procurable. If the bank had promptly asserted its right to the stock, judgment of condemnation in manner and form obtained, could not have been procured; for when the levy was made the corporation books would have disclosed the true situation, and the sheriff's return and subsequent proceedings, including the judgment, would have been materially modified; and no sale could have been effected except through a Court of equity which would have protected the bank's rights. By subrogation the appellant succeeded to the bank's rights, on which it had slept for *seven* years; and he then for *three more years* failed to assert any right to the stock. We think the lower Court was entirely right in rejecting the prayer of the bill. As against the corporation, the plaintiff is clearly and conclusively estopped from asserting the claim he has made; and whatever claim the appellant may have had against the appellee, in relation to the stock, it is very clear

Noble *vs*. Turner, *et al.*

that he cannot now successfully assert it upon the allegations of his bill. The Court below correctly states, that in equity a "presumption exists against every stale claim;" because, as a general rule, persons who have a right and know they have it, are prompt to assert it. But they do not always do so, and therefore the circumstances of each particular case which may explain the delay, usually control the application of the rules as to laches. In this case there are no circumstances excusing or explaining the delay in asserting the appellant's rights. "Conscience, good faith and reasonable diligence" are always required in a Court of equity to justify its interposition. "Where these are wanting the Court is passive." "Laches and neglect are always discountenanced." *Nelson vs. Hagerstown Bank*, 27 *Md.*, 51; *Hawkins vs. Chapman, et al.*, 36 *Md.*, 83. In this case there has been such delay that, at law, an action of replevin, trover or assumpsit would be barred by limitations; and we think, that in the absence of circumstances excusing and explaining the appellant's delay in asserting his rights, he is not entitled to any relief in a Court of equity. That this defence may be taken by demurrer, is conclusively settled in *Bell vs. Bowie*, 65 *Md.*, 355, and in *Biays vs. Roberts, Adm'r of Magruder*, 68 *Md.*, 510. The decree will be affirmed.

*Decree affirmed.*

(Decided 6th December, 1888.)