J. HARRY WEBER

*vs.*

ARTHUR BIEN ET AL.

---

GEORGE L. WEBER

*vs.*

ARTHUR BIEN ET AL.

*Laches—Claim Against Decedent's Estate—Life Tenant Continuing Decedent's Business.*

The proposition that "in a court of equity laches amounts to little, if anything, where there is no injury," is not supported by authority. p. 567

The trustee of a decedent's estate *held* to be barred by laches as regards a claim for money alleged to have been advanced by him individually towards the payment of a mortgage on decedent's property, the claim being fourteen years old, it resting only upon his unsupported statement, and the only person who knew the facts concerning it having died before his assertion of the claim. p. 567

A widow, to whom her husband's interest as a partner in a business was distributed for life, in accordance with his will, and who retained such interest in the business, without any sanction from a court, authority from the will, or the consent of the remaindermen, had no power to burden the estate with liabilities of the business contracted after the husband's death, and consequently his estate could not be made liable for advances made to her in order to liquidate such liabilities. p. 568

*Decided June 26th, 1923.*

Appeals from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Exceptions by J. Harry Weber and George L. Weber to auditor's account, in connection with the estate of Henry Weber, deceased, the father of the exceptants, in which estate the other parties in interest were Arthur Bien and Eva B. Miller, grandchildren of said deceased, and John Bien, Jr., husband of a deceased daughter. From an order overruling the exceptions and ratifying the account, said exceptants separately appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Henry M. Nitzel,* for the appellants.

*John Thomas Scheu,* with whom was *Wm. M. Kerr* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Under the will of Henry Weber, a resident of Baltimore who died in 1904, all of his property was devised and bequeathed to his wife for her life, with the remainder over to his three children, J. Harry Weber, George L. Weber and Annie F. Bien, and their descendants *per stirpes,* and he also charged the estate so devised with the payment of $1,000 to each of his children as they respectively attained the age of twenty-five years. The estate consisted of real and personal property. The personal property, which included the decedent's interest as a partner in the firm of J. Hebner & Company, tailors, was appraised at $23,298.01.

The real estate consisted of several lots located on McElderry Street, Patterson Park Avenue and Baltimore Street, in Baltimore City and on April 6th, 1910, Barbara Weber and the three children filed a bill in Circuit Court No. 2 of Baltimore City for the sale of that property in lieu of partition, and it was sold in due course for $7,000. From that sum $1,000 was paid to each of the children in settlement of

the charge created by the will, which left a balance remaining in the hands of the trustee for the use of the life tenant of $3,566.36.

Upon the death of the life tenant, which appears to have occurred in October, 1919, the case was referred to the auditor, who filed a report and account on January 19th, 1922, distributing the balance in the hands of J. Harry Weber, trustee, to J. Harry Weber and George L. Weber, surviving children of the testator, who each received one-third, and to the husband and children of Annie F. Bien, a deceased daughter of the testator, who received the remaining one-third.

On January 27th, 1922, J. Harry Weber excepted to that account on the following grounds:

"1. That the property mentioned in the bill of complaint in this case, and which was sold for seven thousand dollars (which sum was the fund brought into court and constituted the corpus of the trust estate herein), was subject to a mortgage of $8,500 prior to the sale thereof, and this exceptant on June 30, 1908, contributed of his personal funds the sum of six hundred dollars towards the payment of said mortgage debt, for which he has never been reimbursed, and he submits that he should be allowed the aforesaid sum of six hundred dollars with interest from June 30, 1908, out of the funds now in his hands as trustee.

"2. That on November 11, 1916, during the life time of Barbara Weber, the life tenant of the estate of Henry Weber, under the terms of the will of said Henry Weber, this exceptant and his brother, George L. Weber, each contributed and advanced the sum of eight hundred dollars (making sixteen hundred dollars) towards the liquidation of certain debts for which the property of said Henry Weber was liable, at the request of the life tenant, with the intention of protecting said estate from loss, for which advancement this exceptant and his brother, George L. Weber,

have not been reimbursed, and he submits that he
should be allowed the sum of eight hundred dollars
with interest from November 11, 1916, out of the
property now in the hands of the trustee."

On the same day George L. Weber also filed exceptions to
the account on the ground set out in the second paragraph of
the exceptions of J. Harry Weber, which we have quoted
above.

Testimony was taken in connection with these exceptions,
and on November 29th, 1922, the account was finally ratified
and confirmed. From that order each of the exceptants ap-
pealed to this Court. These appeals present two questions.
One, is J. Harry Weber entitled to be reimbursed out of the
trust funds in his hands for the money he claims to have
advanced on account of payment of a mortgage which was a
lien on the property of Henry Weber at the time of his death.
And, two, are J. Harry Weber and George L. Weber entitled
to be reimbursed out of the trust fund for money which they
claim to have advanced to the business of J. Hebner &
Company?

The circumstances surrounding the payment of the $600,
as stated in the testimony of the exceptants, are these: At
the time of Henry Weber's death there was a balance due on
an outstanding mortgage for $8,500 on certain property
which he owned and which is described in the bill of com-
plaint in this case. In 1908 the mortgage was overdue and
the mortgagee demanded its payment. Mrs. Barbara Weber,
the life tenant, had not sufficient funds to pay off the balance
due on the mortgage, and she requested J. Harry Weber, her
son, to contribute $600 to its payment, which he did under
circumstances thus described in his testimony: "Well, we
got notice from the bank that they wanted the money for that
mortgage, and Mr. Herzog, he was the attorney at that time,
he told my mother that we will have to pay it. So mother did
not have the money, enough money, the full amount, and I

had, I figured it was $585 and put the cash, the money to
equal the amount of $600 up to pay off that mortgage. My
account with the bank was closed the same day as the mort-
gage was paid. It taken my account along with her cash
money to pay up the amount."

The payments of $800 made by each of the exceptants to
the liquidation of debts due by the firm J. Hebner & Com-
pany, which were contracted subsequent to the death of
Henry Weber, were made under these circumstances. The
interest of Henry Weber in the business of J. Hebner & Com-
pany was valued in the administration account of Barbara
Weber, executor of Henry Weber, filed in the Orphans' Court
of Baltimore City in 1904, at $14,698.35. That interest was
distributed to her for life under the terms of the will. In-
stead of converting that interest, she retained it in kind and
become a partner in the firm after her husband's death, and
continued to be a partner in it for a number of years and
until its dissolution. After a time the business of the firm
began to decline, until in 1916, to quote the testimony of
J. Harry Weber, the "business went to the bad, it was not in
the hands of a receivership, but after Mr. Hebner's death
we found out that we could not continue the business under
the way we had done, the conditions, and we found out that
we were about, I do not know exactly how to explain, if they
would have forced us, we would have gone into the hands of
receivers, and Mr. Herzog taken it up with the creditors, and
they allowed my mother to carry on the business, paying off
10 per cent., whenever we received it from the assets of the
business. And we got so far that we paid off 50 per cent.,
my mother had and then we found out we could not go any
further, because we could not replenish the stock, could not
get any more cloth to sell, and we simply, Mr. Herzog made
a trip to New York to see the New York creditors, and took
it up with the bank first before he went to New York, and
they decided they would give us five days to get up this
extra 15 per cent. which they demanded to settle it for all

the creditors in New York, and Mr. Herzog returned and went to see mother, and we took it up, and that is why my brother and I advanced $800 to pay off that 15 per cent. to the New York creditors." "What date was that?" "November 11th, 1916." "You and your brother each contributed $800?" "Both, $800 apiece." "At whose request was that?" "Barbara Weber." In 1917 the firm became insolvent and went out of business entirely.

Upon these facts the learned judge who tried the case below held that none of these three claims could be allowed, for these reasons:

> "Because the testimony shows the advances, if any, were made voluntarily to the life tenant and cannot be charged against the corpus. Because the exceptants' claims are stale, if not barred by limitations made under such circumstances as forbid their allowance. While the above trust fund should have been distributed promptly after October 24th, 1919, when the life tenant died, no attempt to do so was made until June 1st, 1921, when the trustee filed a petition for reference to an auditor on which the usual order of reference was passed, but the account was not filed until January 19th, 1922, then only because of the court's request to the auditor, the auditor not causing the delay; exceptions were not filed until on January 27, 1922; on February 6th, 1922, the papers were sent back to the auditor to consider the exceptants' claim, under an order requiring all testimony to be closed within less than thirty days, notwithstanding which, the exceptants did not begin their testimony for two weeks, did not close it for more than six months thereafter. Claims as old as these—one fourteen years, the other six years old—when made and presented under the above circumstances, should not be allowed."

While we fully concur in the conclusion reached by the court, we are not prepared to say that the payment of $600

by J. Harry Weber on account of the mortgage debt was a
voluntary payment, but whether it was or was not becomes
immaterial in this case, because in either event the exceptants'
right to relief is barred by laches.    Counsel for exceptants
meet that objection with the proposition that "in a court of
equity laches amounts to little, if anything, where there is no
injury."  No authority is given for that principle, and in our
opinion the law is otherwise.    In *Noble* v. *Turner,* 69 Md.
527, it is said:  "The court below correctly states, that in
equity a 'presumption exists against every stale claim'; be-
cause, as a general rule, persons who have a right and know
they have it, are prompt to assert it.    But they do not always
do so, and therefore the circumstances of each particular case
which may explain the delay, usually control the application
of the rules as to laches.    In this case there are no circum-
stances excusing or explaining the delay in asserting the
appellant's rights.    'Conscience, good faith and reasonable
diligence' are always required in a court of equity to justify
its interposition.    'Where these are wanting the court is pas-
sive.'    'Laches and neglect are always discountenanced.'
*Nelson* v. *Bank,* 27 Md. 51; *Hawkins* v. *Chapman,* 36 Md.
83."    In this case the exceptant waited until the only person
who knew the facts concerning it and could have testified
to them had died, before asserting his claim.    Resting as it
does upon his mere unsupported statement, it cannot be said
that the appellees were not injured by the long delay, since
they lost the benefit of the testimony of the only disinterested
witness familiar with the facts.

What has been said of the effect of the delay in asserting
the $600 claim also applies to the two $800 claims, if they
could otherwise supply a valid basis for the exceptants'
contention that they are entitled to be reimbursed from the
funds of the estate for such payments.    But clearly there is
no legal basis for these claims.    The money which J. Harry
Weber and George L. Weber say they advanced to save the
business of J. Hebner & Company was not supplied to the

estate but to their mother, who was using property belonging to the estate to carry on a business in which she was a partner without the sanction or approval of any court, without the consent of the persons entitled to the estate in remainder, and with no vestige of authority from the will or from any contract made by Harry Weber. Certainly under such circumstances she had no power to burden the estate with liabilities of the partnership business contracted after the death of her husband, and she could have had no claim against the estate for the payment of such debts, and obviously, if she had not the power to bind the estate for the debts of the partnership, no one else could have the power to so bind it.

In *Woerner on the American Law of Administration,* sec. 123, it is said: "The death of any member of a firm operates its dissolution as to all, unless by the articles of co-partnership or other agreement between the partners it is otherwise stipulated. * * * It has been held in England and in some instances in the United States, that a court of equity will authorize the administrator of a deceased partner to continue the partnership in behalf of an infant heir; but this seems a dangerous power, perilous alike to the administrator, who is personally liable for debts incurred in the prosecution of the business, and the beneficiaries of the estate, whose interests may be jeopardized by the vicissitudes of trade, although the administrator may exercise the utmost vigilance and caution. The extent of the liability of a deceased partner's estate for debts contracted after his death on behalf of the partnership will in all cases depend upon the terms of the agreement in virtue of which it is continued; and while it is clear that, on general principles, no limitation of the extent of his assets to be employed in the partnership business can affect the rights of creditors existing at the time of his death, it is equally clear that only the most unambiguous language, showing the positive intention of the testator to render his general assets liable for debts contracted after his death, can justify the extension of the liability of his estate beyond the

actual fund employed in the partnership at the time of his death." And what is there said of the powers and duties of executors, in dealing with the interest of a decedent in a partnership, which forms part of the assets of the estate which they are called upon to administer, applies with equal force to persons in the position of the life tenant in this case, because the reason for the rule is the same in both instances and that is, it would be unjust and inequitable to allow an executor or life tenant to jeopardize the interests of the remaindermen by subjecting the assets of the estate to the uncertainties and risks of business ventures without their assent.

It follows therefore that the order appealed from, and which forms the basis of both the appeals presented by this record, must be affirmed.

*Order affirmed, with costs to the appellees.*