BLAINE MAYS ET AL. *v.* GEORGE MAYS,
ADMINISTRATOR.

[No. 3, January Term, 1939.]

■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
                                    ■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

*Decided February 1st, 1939.*

The cause was argued before BOND, C. J., OFFUTT,

PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Daniel S. Sullivan* and *Daniel S. Sullivan, Jr.*, for the appellants.

*H. Courtenay Jenifer*, with whom were *Jenifer & Jenifer* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Baltimore County, over-ruling appellants' demurrer to plaintiff's bill of complaint; annulling and setting aside a short release of a mortgage from appellants to Robert H. Mays and Carrie A. Mays for $3700, dated January 16th, 1926, and recorded among the mortgage records of Baltimore County, and re-establishing said mortgage; but annulling and setting aside a $1600 mortgage from appellants to Carrie A. Mays dated August 31st, 1927, and likewise recorded among the mortgage records of Baltimore County, the date of the last mentioned mortgage being likewise the date of the annulled short release of the $3700 mortgage.

Robert H. Mays and Carrie A. Mays were husband and wife and, during their joint lives, held the mortgage to which the release applied, as tenants by the entireties. The husband departed this life on or about June 14th, 1926, approximately five months following its execution, while his widow, Carrie A. Mays, departed this life intestate December 19th, 1929. On February 14th, 1930, letters of administration upon her estate were by the Orphans' Court for Baltimore County granted to George Mays, one of her sons. In addition to George, other issue of the marriage of Robert H. Mays and Carrie A. Mays included Blaine Mays, one of the appellants, Albert Mays, Irving Mays, Temple Miller and Hester Ensor, all of whom survive their mother.

The material allegations of the plaintiff's bill, although denied by defendants' answer, are to the effect that, after

the death of Robert H. Mays, his widow, Carrie A. Mays, declined physically and mentally and acquired a serious illness from which she never recovered; that such illness affected her mind and body, and from June 14th, 1926, to the date of her death on December 19th, 1929, the defendants assumed complete control and management of her business affairs, by reason of which conduct on their part a confidential relationship arose between them and the decedent, who was not only infirm and helpless, but whose mind was so enfeebled and impaired as to render her unfit to transact any business, and that during her imbecility and incapacity she was induced by means of fraud, misrepresentations, undue influence and coercion, practiced upon her by the defendants, to execute a short release of the $3700 mortgage on the mortgage records in the office of the Clerk of the Circuit Court for Baltimore County, no consideration for which release passed to her at the time of its execution. It was further alleged that the defendants knowingly and deliberately violated the confidential relationship existing between them and decedent, and although repeated demands had been made upon them to account for the funds represented by said mortgage, they had continued to delay such accounting and had refused to render the same.

The defendants' demurrer to the bill of complaint was over-ruled. Since, for the purpose of the case, the truth of the relevant and well pleaded facts alleged in the bill was thereby admitted (*Miller's Equity Proc.*, sec. 133 and cases there cited; *Roth v. Stuerken*, 124 Md. 404, 92 A. 808), in view of the nature and character of the allegations of the bill, no error is found on the part of the chancellor in over-ruling it. *Atkinson v. McCulloh*, 149 Md. 662, 132 A. 148; *Reck's Excrs. v. Reck*, 110 Md. 497, 73 A. 144; *Thiede v. Startzman*, 113 Md. 278, 77 A. 666; *Bentley v. Bentley*, 141 Md. 428, 119 A. 293; *Upman v. Thomey*, 145 Md. 347, 125 A. 860; *Tracey v. Tracey*, 160 Md. 306, 153 A. 80; *Mead v. Gilbert*, 170 Md. 592, 185 A. 668.

The decree appealed from was passed after testimony

had been taken orally in open court, and was based upon several findings of fact, the most prominent of which are as follows: (a) That the defendants enjoyed a confidential relationship with Carrie A. Mays and had failed to meet the burden of proof by showing affirmatively the fairness of the mortgage release; (b) that the alleged signature of Mrs. Mays to the short release of the mortgage was a forgery, also that three receipts produced by defendants representing alleged payments upon the mortgage indebtedness and purporting to bear the signature of Carrie A. Mays were forgeries. The conclusion that the mortgage release was a forgery was based upon the premise that Carrie A. Mays could not write her name. After finding those facts, the chancellor held that the plaintiff's right under the circumstances to have the short release of the mortgage annulled was not barred by laches, because the defendants had in no way been prejudiced by the delay of the plaintiff in asserting his claim.

From a consideration of certain undisputed facts contained in the record, this court finds itself unable to agree with the conclusion of the chancellor to the effect that laches is not a bar to plaintiff's claim. The bill of complaint was not filed until October 13th, 1936, although Carrie A. Mays departed this life in December, 1929, and letters of administration upon her estate were granted the plaintiff February 14th, 1930. It, therefore, affirmatively appears that, during the period of almost seven years, the plaintiff, while under no disability, failed to take any action to correct the wrongs and injustices which he now contends were practiced upon his decedent by defendants; moreover, it is perfectly clear that he was aware of his alleged rights in the premises from shortly after he qualified as administrator, for on August 13th, 1931, his counsel wrote the attorney for defendants that a proceeding would shortly be instituted to set aside the mortgage release, and in that letter reference was made by him that he had seen defendants' counsel "once or twice" and was writing the letter confirming what he told him upon these occasions.

The release purports to have been executed August 31st, 1927, in the office of the clerk of the Circuit Court for Baltimore County at Towson, Maryland, and the alleged signature of the mortgagee "Carrie A. Mays" appears beneath a typewritten release placed at the foot of the recorded mortgage. It was testified by Bernard P. Bruns, a deputy clerk, that the typewritten portion of the release was made upon the record by a special typewriter kept in the clerk's office for that purpose. The witness was not employed in the clerk's office at the time the release was executed, but stated that the release must have been written upon the record by some other deputy; that it was never done by the mortgagor or mortgagee, and the original records were never permitted to be out of the clerk's custody. The clerk or his deputy, who was present at the time the release was executed, and undoubtedly made the typewritten portion of it, failed to witness the signature of the releasor, as required by Code, art. 21, sec. 38, but opposite the signature this appears: "Witness: T. Tilden Kelbaugh," and below in typewritten form is this notation, "Recorded August 31, 1927, at 10:30 A. M. and Ex'd. Per—William P. Cole, Clerk."

It is also shown that Mr. Kelbaugh, who concededly was a member of the Baltimore County Bar in good standing, was at that time acting as counsel for Carrie A. Mays, and was not, as intimated by the chancellor, acting for the mortgagors. Kelbaugh lived until August 21st, 1935, a period of almost five years after letters of administration upon Mrs. Mays' estate were granted plaintiff, and slightly more than four years from the time plaintiff's counsel had written for the defendants that steps to have the release set aside would be taken within "a day or two."

Blaine Mays and Carrie Lossie Mays, his wife, the mortgagors, were by virtue of Code, art. 35, sec. 3, incompetent to testify as to the part taken by Carrie A. Mays in releasing the mortgage, since such testimony would necessarily have related to a transaction had with decedent and statements made by her. Kelbaugh's in-

terest being merely professional in nature, he was the only disinterested person who could have fully explained the transaction, and, since he was counsel for Mrs. Mays, it would seem that his testimony upon the subject would have been entitled to great weight. But the delay on the part of the plaintiff to take action during the more than four year period which he lived from the time at which action could unquestionably have been taken can only result in prejudicing the rights of the defendants, who, by reason of his death, are reduced to the unfortunate position of being unable to produce their defense. The doctrine of laches, therefore, is peculiarly applicable in such a situation, and, if not applied in this case, it would be difficult to assume a case to which it did apply. The unexplained delay is present, and certainly the resulting injury to defendants has occurred by reason of the delay. *Demuth v. Old Town Bank,* 85 Md. 315, 37 A. 266; *Roberto v. Catino,* 140 Md. 38, 116 A. 873; *Boyd v. Shirk,* 125 Md. 175, 93 A. 417; *Weber v. Bien,* 143 Md. 561, 123 A. 52. We are not unmindful of the fact that Carrie Lossie Mays, wife of Blaine Mays, was called by plaintiff to testify, but a careful consideration of her testimony discloses nothing favorable to plaintiff's contentions respecting confidential relations between herself and husband on the one part and Carrie A. Mays on the other; nor that the release of the $3700 mortgage was procured by fraud.

Notwithstanding that in our judgment laches is a complete defense to the suit, we may make the further observation that in our opinion the evidence does not support the conclusion of the chancellor that Mrs. Carrie A. Mays' signature was forged to the mortgage release in the clerk's office. It is shown that she went to the office, accompanied by her counsel, two of her sons, a daughter-in-law, and a grandson, to execute the release, since she did not have in her possession the original mortgage. The presumption is permissible that the release was by some one employed in the clerk's office typewritten upon the record, and her signature was witnessed by her counsel,

whose presence on that occasion is a sufficient refutation of the conclusion that his client was without independent advice relative to the business she was transacting. Almost simultaneously therewith she proceeded to the office of Mr. James Kelly, a notary public, and, after defendants had executed a new mortgage to her for $1600, she made oath to its consideration. The circumstances, therefore, attending the release are such as to create an inherent improbability that the signature to that release was not made by her. Apart from these considerations, plaintiff's counsel offered in evidence and placed in the record a copy of a deed recorded among the land records of Baltimore County bearing date of March 23rd, 1907, in which the grantors were Albert Mays, Alice Mays, Robert Harrison Mays, and Carrie Ann Mays, and proved by George Mays, a son of Carrie A. Mays, that the signature to that instrument was that of his mother. There also appears in the record a photostatic copy of that part of the last mentioned deed containing the signatures of Albert Mays, Alice Mays, Robert Harrison Mays, and Carrie A. Mays, the grantors. Making allowance for the fact that at the time the mortgage was released Mrs. Mays was twenty years older and quite advanced in years, a comparison of her signature as it there appears with the signature upon the release of the mortgage has convinced us that both signatures were made by the same person.

Aside from the fact that plaintiff's counsel offered that instrument for the purpose of proving the genuine signature of Carrie A. Mays, and in so doing conceded her ability to write her name, the evidence relied on to show her inability to read and write is negative in character and confined to the testimony of Mrs. Miller that she "thought" her mother could not write, and of a granddaughter that, so far as she knew, the grandmother could not read and write, plus the circumstance that on April 13th, 1927, when withdrawing certain money on deposit to her credit in Sparks State Bank, her name was signed to the withdrawal slip by Blaine Mays and she made her mark thereto; whereas, her three sons, Albert, Irving,

and George, testified affirmatively as to her ability to read and write, and testimony to the same effect was given by a daughter-in-law and four grandchildren. The preponderance of evidence therefore was to the effect that she could read and write.

However, in view of our conclusion previously expressed as to the applicability of the doctrine of laches as a defense, further comment and observation upon the evidence could serve no useful purpose. It is sufficient to say that the decree appealed from was correct in overruling the demurrer to the bill of complaint; that it is not sustainable in respect to setting aside the release of Carrie A. Mays to the $3700 mortgage and is, therefore, erroneous in vacating the $1600 mortgage from appellants to Carrie A. Mays, which mortgage must be restored to its status as of the date of Mrs. Mays' death. For these reasons, the decree appealed from will be affirmed in part and reversed in part, and the cause will be remanded for further proceedings not inconsistent with the views herein expressed.

*Decree affirmed in part and reversed in part, and cause remanded for further proceedings in conformity with this opinion, with costs to the appellants.*