KENNY, EXECUTOR *v.* PEREGOY

[No. 60, October Term, 1950.]

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Nathan Patz,* with whom was *Joseph L. McAllister* on the brief, for the appellant.

*Solomon Liss,* with whom were *Carroll Mitchell* and *Herman Weissman* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree setting aside a separation agreement.

On February 3, 1926, the appellee, E. Preston Peregoy, married Rose M. Peregoy. About a month previously he had purchased with his own funds a leasehold property at 443 East 28th Street, Baltimore City. On August 7, 1926, this 28th Street property was conveyed to the appellee and his wife as tenants by the entireties. On February 9, 1934, they entered into an agreement in which it was alleged that differences had arisen between them and in consequence thereof, they had separated

and intended in the future to live apart. For the purposes of this case, this agreement provided, among other things, that the parties should live separate and apart.

"2. That all the property of the said Rose M. Peregoy, real and personal, now held by her absolutely or subject to the marriage rights of the said E. Preston Peregoy, or which shall in any manner devolve on her, shall be her sole and separate property, wholly free from any rights of the said E. Preston Peregoy during her life or after her death, with full power to her to convey, assign, charge, or will the same as if unmarried. And that the said E. Preston Peregoy shall not at any time claim any right in any of the aforesaid property as husband, widower, heir, next of kin or successor. And that the said E. Preston Peregoy will execute such deeds or papers as from time to time will prove necessary or convenient to enable her to deal with her said property as if unmarried.

"3. That the said E. Preston Peregoy will pay to the said Rose M. Peregoy the sum of Fifteen ($15.00) Dollars on the eighth and Fifteen ($15.00) Dollars on the twenty-third of each and every month for her maintenance and support. That he will convey to her all of his right, title and interest in the leasehold property No. 443 E. 28th Street, now owned by them as tenants by the entireties, for the sum of Six Hundred ($600.00) Dollars. That he shall release her of all claims that he has for the furniture now used by them in the above premises with the exception of one dining room suite, one living room suite, and one washing machine, which belong to him. All other furniture and household effects in the premises together with the radio is the sole and separate property of the said Rose M. Peregoy."

The wife agreed that she would not at any time molest the appellee, would not incur any debts or liabilities on his account and "will not bring any suit of any kind for the compelling of the said E. Preston Peregoy to pay her support, maintenance or alimony as long as the said E. Preston Peregoy shall comply with the agreement

above set forth to pay her Fifteen ($15.00) Dollars respectively on the eighth and twenty-third of each and every month from the date of the agreement." Any property of the appellee, which he then had or afterwards acquired, was to be his sole and separate property, free from any rights of his wife during his life or after his death. It was further agreed "that the said Rose M. Peregoy shall not at any time claim any right in any of the aforesaid property as wife, widow, heir, next of kin or successor." She further agreed to execute such deeds or papers necessary. It was further agreed that this agreement should not bar any action for divorce either *a vinculo matrimonii* or *a mensa et thoro*. It was "further understood in the event of divorce proceedings between the parties hereto that the said Rose M. Peregoy will make no claim for alimony *pendente lite,* permanent alimony or counsel fee; it being understood that this agreement as to the payment by him to her of the sum of Fifteen ($15.00) Dollars semi-monthly as above set forth shall continue until the date of final decree for divorce *a vinculo matrimonii.*"

After the execution of this agreement on February 9, 1934, the parties separated and they remained apart until May, 1934. At that time, they went back to live together and the husband deposited $800 in their joint names in a bank account to which the wife added $300. They continued to live together in the same house and in the same bedroom until July, 1934, when he asked her to reconvey the 28th Street property back to their joint names as tenants by the entireties. She refused to do this and at that time they began to occupy separate bedrooms in the house.

On September 8, 1934, while they were still living in the same house, the wife filed a bill of complaint asking for alimony *pendente lite,* permanent alimony and counsel fees. After answer was filed to that bill, an order was passed that the appellee pay the wife $14 per week as alimony *pendente lite.* No further action was taken in that case. On November 5, 1935, while the parties were

still living in the same house, the wife filed a bill of complaint against her husband asking for a divorce *a mensa et thoro,* alimony *pendente lite* and counsel fee. On the same day an order was passed directing the husband to pay the wife $16 per week as alimony *pendente lite.* On March 17, 1936, a decree was signed granting the wife a divorce *a mensa et thoro* and permanent alimony of $20 per month. The joint account was divided, each receiving approximately $630. After that decree the appellee left the house and the parties have not lived together since. On July 23, 1937, she filed a petition asking for a modification of the alimony award, but apparently no action was taken on that petition. On July 13, 1938, she filed another petition for increase in alimony, which was answered and no action taken thereon. On October 24, 1938, she filed another petition for increase of alimony, which was answered and in January, 1939, the decree was modified and the husband ordered to pay the wife $40 per month as permanent alimony, payments to be made semi-monthly through the Probation Department of the Supreme Bench. Mr. Charles F. Snyder, the Chief Probation Officer of the Supreme Bench of Baltimore City, testified that this case came to his department on the 17th day of March, 1936, at which time Mr. Peregoy was ordered to pay $20 a month. The order was later modified as of January 23, 1939, to $40 a month. Mr. Snyder said the appellee paid through that department $4,240 with a balance due of $580 at the time of the wife's death.

The wife died on October 8, 1947. On June 2nd, 1948, the appellee filed a bill of complaint in which he set out facts hereinbefore stated and further alleged that on the first day of March, 1948, he filed a petition in the Orphans' Court of Baltimore City, as a result of which the executor was ordered to show cause why the legal shares of the surviving spouse, the appellee, should not be allowed in the distribution of the estate. The executor filed an answer to that petition setting out the aforesaid agreement dated February 9, 1934, and claiming that

by virtue of that agreement, the appellee had no right or interest in the estate of the deceased. This bill also set out the fact that the wife left a will appointing Andrew Kenny as executor, which by its terms attempted to dispose of the assets of the deceased to the exclusion of the appellee. The bill asked that the agreement of February 9, 1934, be declared null and void, that Andrew Kenny, the executor, be directed to distribute to the appellee his legal share in the estate of Rose M. Peregoy in accordance with the laws of the State of Maryland. After answer filed and the taking of testimony, the chancellor found that the wife had repudiated every provision of the agreement and that the contract was rescinded in *toto* by the parties upon reconciliation and decreed that the separation agreement was null and void and of no effect. The executor was ordered to state his final administration account and to allow and distribute to the appellee, the surviving spouse, his legal share of the said estate in accordance with the laws of the State of Maryland. From that decree the appellant appeals here.

The chancellor in his opinion in this case stated: "The Court must gather the intention of the parties after the reconciliation, from their conduct and their action. The husband did not seek to have the property reconveyed to both of them as tenants by the entireties and so the question of laches does not apply. We are dealing only with the rights as surviving spouse, and his claim was seasonably filed." With this finding of the learned chancellor, we do not agree.

In the case of *Mach v. Baranowski*, 152 Md. 53, 136 A. 34, Mach and his wife were living separate and apart and entered into an agreement from which paragraph 2, *supra*, of the agreement in this case was probably taken, as it is practically the same as one of the paragraphs in the agreement in the Mach case. In that case, after the execution of the agreement, the husband and wife again lived together and, although they separated several times, they were living together at the time of

her death. During her lifetime, at an attorney's office in the presence of her husband, she executed a deed of certain property to a straw man who in turn conveyed this property to her for the term of her natural life and after her death to her children. After the wife's death, Mach filed a bill asking, among other things, that this deed be set aside and that the property be declared to belong to the estate of his former wife. He contended that the agreement was annulled by the subsequent acts of the parties in resuming their marital relations and the conveyance to the straw man, without his participation therein, was in violation of his marital rights. The only question before the court in that case was whether the fact that these parties had resumed their marital relations voided and annulled the separation agreement. This Court in that case said 152 Md. at pages 59 and 60, 136 A. at page 36: "In the case before us, Mach, the appellant, for the sum of eight hundred dollars and other considerations mentioned in the agreement of separation, covenanted with his wife that the property then held by her, or which would thereafter devolve on her, should be her sole and separate property, 'wholly free from any rights of the said Peter Mach, during her life, or after her death, with full power in her to convey, assign, charge, or will the same, as if unmarried.' This agreement was in the nature of a postnuptial contract or a settlement of property rights, based on an independent consideration, which might have been made had there been no separation, and unlike the provisions therein contained to live apart, neither to molest the other, was not, we think, abrogated by their reconciliation and the resumption by them of their marital relations."

In the agreement now before this Court, both the husband and wife renounced all rights in all property of the other as husband, widower, wife, widow, "heir, next of kin or successor." This was a mutual release of the rights of each as heir, next of kin or successor in the other's property and was effective as of the date of the signing of the agreement. The appellee claims that this

agreement was annulled in May, 1934, when the parties went back to live together and further in September, 1934, while the parties were still living together, when the wife filed a bill of complaint in which she demanded alimony *pendente lite*, permanent alimony and counsel fees.

Some affirmative act of the husband was necessary to release his statutory right in his deceased wife's estate. *Jaworski v. Wisniewski*, 149 Md. 109, 117, 131 A. 40. Here the husband by the agreement affirmatively released those statutory rights. This Court said in the case of *Hewitt v. Shipley*, 169 Md. 221 at page 224, 181 A. 345, at page 346: "This court has from time to time been called upon to construe such agreements of separation, both prenuptial and postnuptial, and, while no two are exactly alike, the general rule in this and other jurisdictions as to both classes seem to be that such an agreement will not be construed to bar the right of a surviving spouse in the estate of the other, *unless it is clearly expressed therein,* or necessarily implied therefrom." (Italics supplied.) In the case now before this Court, the rights in the estate of the surviving spouse are clearly and expressly waived by the agreement.

The doctrine of laches is well expressed in the case of *Noble v. Turner*, 69 Md. 519, at page 527, 16 A. 124 at page 126, where it is said: "The court below correctly states, that in equity a 'presumption exists against every stale claim;' because, as a general rule, persons who have a right and know they have it are prompt to assert it. But they do not always do so, and therefore the circumstances of each particular case which may explain the delay usually control the application of the rules as to laches. In this case there are no circumstances excusing or explaining the delay in asserting the appellant's rights. 'Conscience, good faith, and reasonable diligence' are always required in a court of equity to justify its interposition. 'Where these are wanting, the court is passive.' 'Laches and neglect are always discountenanced.' *Nelson v. Hagerstown Bank*, 27 Md. 51; *Hawkins v. Chapman*, 36 Md. 83." *Weber v. Bien*, 143 Md. 561, 567, 123

A. 52. In an equity court where relief is sought it is an ordinary rule that the cause of action arises as soon as a party has a right to apply for relief. *Thurston v. Blackiston,* 36 Md. 501, 509. Of course, in equity, in determining what will constitute laches, such as to bar relief, the court has no inflexible rule as to the length of time, such as limitations in law cases, but must decide the question before it from all the facts and circumstances of each particular case. *Plitt v. Kaufman,* 188 Md. 606, 615, 53 A. 2d 673.

In July, 1934, when the husband asked the wife to reconvey the 28th Street property back to their joint names as tenants by the entireties, she refused to do this. Therefore, the husband knew that the wife had not waived her rights under the agreement. If the husband considered that the agreement had been breached by the reconciliation of the parties and by the bill of complaint filed by the wife, after he left the home in March, 1936, he could then have filed a bill of complaint offering to return the six hundred dollars and asking that the agreement now before this Court be declared null and void and the wife be compelled to reconvey the property. He did not to this.

The inventory of the wife's estate in the Orphans' Court shows the total valuation to be $6,551.70, of which amount $5,000 represents the value of the 28th Street property. The appellee waited over thirteen years to bring action to declare the agreement null and void. Instead of endeavoring to get back his interest in the 28th Street property during the wife's lifetime by having the agreement annulled, he now tries to obtain an interest in that property as the surviving husband of the deceased wife, a right he waived in that agreement. He waited until the only person other than himself, who knew the facts "and could have testified to them, had died, before asserting his claim. * * * it cannot be said that [appellant was] not injured by the long delay". *Weber v. Bien, supra,* 143 Md. at page 567, 123 A. at page 54. The delay on the part of the husband has put the appellant in the unfortunate position of being

unable to produce his defense.  *Mays v. Mays,* 176 Md 159, 160, 164, 165, 4 A. 2d 121.

Of course, as pointed out in the case of *Pairo v. Vickery,* 37 Md. 467, at page 488, the law has in some measure equalized the parties by making the appellee an incompetent witness, by statute, now Code 1939, Article 35, § 3. However, the appellant here is faced with the various court actions brought by his decedent, which he is now unable to explain, and which could be accounted for only by the decedent.  She and her husband are the only witnesses who could testify as to the intentions of the parties in reference to the separation agreement when they resumed marital relations in 1934.  It was recently said by this Court in the case of *Young v. Cockman,* 182 Md. 246, at page 253, 34 A. 2d 428, 433, 149 A. L. R. 1006: "A court of equity will not grant relief to a claimant who has slept on his rights for an unreasonable and unexplained length of time, thereby suffering his claim to become stale and causing prejudice to an adverse party.  Such manifest neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them.  *Hoffa v. Hough,* 181 Md. 472, 30 A. 2d 761, 763." See also Restatement of the Law, Restitution, § 148, Laches and Statutes of Limitations.

Also the husband, by failing to take action, left the wife in a position where she would have had no claim against his estate, had he predeceased her.

The excuse given by the appellee as to the delay in asserting his rights is that he did not know of his wife's intention to disinherit him in her will.  Wrongly or rightly, he could hardly have expected otherwise.  The excuse for delay in asserting his rights is not sufficient.  "Conscience, good faith and reasonable diligence" require that equity remain "passive" in this case. *Noble v. Turner, supra,* 69 Md. at page 527, 16 A. 124, 126; *Hughes v. Leonard,* 66 Colo. 500, 181 P. 200, 5 A. L. R. 817.  The bill of complaint will be dismissed.

*Decree reversed, bill of complaint dismissed with costs.*