KENNY, Executor *v.* McALLISTER et al.

[No. 38, October Term, 1951.]

*Decided December 6, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Hugh J. Monaghan, II,* for the appellant.

*Jack L. Grossman* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from allowance to appellees of $1,500 for legal services to the estate administered by appellant as executor, in the lower court and in this court, in *Kenny v. Peregoy*, 196 Md. 630, 78 A. 2d 173. Without restating the facts or the nature of that case, we refer to our opinion.

Appellant, brother of his testatrix, was his own only witness in the instant case. He is a member of the bar, but has a Government position in Washington and has not practiced law since 1932 and 1933. The estate was appraised in the Orphans' Court at $6,551.70, including leasehold property, bequeathed to appellant, at $5,000. An auctioneer and real estate dealer testified that it is now worth $8,000. It is occupied by two tenants who are paying rents amounting to $85 a month, one of them a "nominal" rent of $30 paid by a brother of appellant.

The testatrix died on October 8, 1947. If in the *Peregoy* case the husband had prevailed, his share would have been $2,000 plus one-half of the surplus, *i.e.*, about $4,250 at appraised value, or $5,750 at enhanced value, in either case plus half the net income, for four years to date, less half the cost of administration. We think the estate saved at least $6,000 by the decision in the *Peregoy* case.

Two lawyers, of character, ability and experience, in the practice of law and in respect of fees for legal services, certified that in their opinion $1,500 is a fair and reasonable allowance, "as a minumum", and testified to that effect. They testified in the light of information from Mr. Patz that "the approximate number of hours" devoted to the services "ran somewhere around seventy to seventy-five hours" or between a minimum of sixty-nine and a maximum of seventy-seven hours. Appellant testified that he first offered to pay Mr. Patz $750 and Mr. McAllister $150, which "was more than generous", he withdrew that offer, and he now thinks the estate should be ordered to pay $500 to Mr. Patz and $100 to Mr. McAllister. "* * * I am a member of the bar in the District of Columbia, and was, in a way, able to judge the merits of the case, and I never had any doubts about our prevailing in the Court of Appeals. The case did not, in my mind, possess any novel or difficult twists, since it was predicated entirely upon the *Baranowski* case. [*Mach v. Baranowski*, 152 Md. 53, 136 A. 34]. * * * I concluded that the Court of Appeals, unless it went along with us, it would be necessary for them to reverse themselves in the *Baranowski* case. The question of novelty or difficulty in the case did not occur to me then; just the necessary steps in the legal controversy. The question of laches in the case made it simpler on my part. * * * In spite of the detailed testimony here this morning, the case still remains an ordinary day to day trial, in the life of any lawyer, a day in trial court, preparation of an appeal brief, and a day in the Court of Appeals, and I think the offer that I made to him was very generous,

but I think the services to the estate were not worth $1,500." We are unable to share appellant's confidence in his own opinion, (foresight and hindsight), on legal questions and on the value of legal services—or even on our own ultimate infallibility. Perhaps the compelling force of the *Baranowski* case was not put to us by counsel as bluntly as it is by appellant, but, as most lawyers know, such arguments are not so irresistible as appellant seems to think.

Appellant contends that $1,500 is excessive because (a) in the lower court appellees were not diligent in filing a brief requested by the court, (b) in this court the case was too simple to require substantial effort by counsel, (c) "When I first talked to Mr. McAllister, back in 1947, about this case, he remarked that the attorneys' fees would come out of the executor's commission, and that is the thought I carried all along in conducting the litigation in this case", and (d) the case was not undertaken for a contingent fee and $1,500 is too large a part of the amount involved. The first two reasons seem to answer themselves and also to destroy each other. We may say a word as to each. The first reason is based solely on a remark in a letter of January 3, 1950 from Mr. Patz to Judge Sherbow, accompanying the brief, "I am sorry that the court felt that we had been amiss in failing sooner to submit this memorandum, but I did not carry any recollection that a brief was desired, since at the oral argument months ago we gave references to the authorities upon which we relied." Judge Sherbow did not say Mr. Patz had been amiss. As to the second reason, our opinion in the *Peregoy* case indicates that we failed to appreciate just how simple appellant says the case was. As to the third reason, Mr. McAllister testified that he did not tell appellant that counsel fees in the *Peregoy* case would or must be paid out of executor's commissions; "I told him my fee [for helping him to administer the estate] would have to be paid out of the commissions. * * * The court would not allow me a fee for that." It is clear that on this point Mr. McAllister

is right and appellant is wrong. The *Peregoy* case was instituted in June, 1948. Appellant and Mr. McAllister could not "talk, back in 1947, about this case".

It is true the case was not undertaken for a contingent fee. But in this country it is generally held that one of the matters to be considered in fixing fees is the "practical result obtained", *County Corporation v. Semmes,* 169 Md. 501, 527, 182 A. 273, 284; *Spencer v. McMullen,* 198 Md. 90, 98, 81 A. 2d 237, 241 or, as expressed in the canons of ethics of the American Bar Association, "the benefits resulting to the client from the services". *American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 193, 200, 70 A. 2d 40, 42. To this extent, unfortunately perhaps, in America many fees involve a contingent element. We may assume that if the executor had not prevailed or if the amount involved had been much less, $1,500 would have been an excessive fee, and that if the amount involved had been $60,000, a fee of $15,000 would have been excessive.

The question before us is whether in fixing appellees' fee the Orphans' Court abused its discretion. As all the present members of this court sat in the *Peregoy* case, less than a year ago, we need not rely solely on the Orphans' Court and the lawyers who testified. We think the case deserved the attention it received from appellees and received the attention it required. In the lower court it was well prepared and well tried; in this court it was well briefed and well argued. We are satisfied that in fixing the fee the Orphans' Court did not abuse its discretion.

Appellant contends that appellees should be required to pay the cost of printing, in appellant's appendix, repetitious matter at the demand of appellees and on their threat to move to dismiss the appeal if the demand were not complied with. The short answer to this contention is that Rule 39 does not require the appellant to print anything the appellee may demand. In *Sunshine Laundry Co. v. White,* 197 Md. 582, 80 A. 2d 1, and in other cases we have held that it is not sufficient for the

appellant to print garbled bits of testimony or parts otherwise clearly inadequate to present the questions which appellant asks us to review. We have also imposed on appellees cost of duplicated printing in appellees' appendix. *Martin v. United Slate, Tile and Composition Roofers*, 196 Md. 428, 442, 77 A. 2d 136, 142. But Rule 39 recognizes that there may be room for reasonable difference of opinion as to what should be printed and permits the appellee to print anything not printed by the appellant. We do not undertake to decide in every case just how much should have been printed. When there is reasonable ground for difference of opinion, we would not dismiss the appeal for not printing, even though we might not impose the cost of printing on the appellee.

*Order affirmed, with costs.*